[L. A. No. 9063. In Bank.—June 23, 1926.]

## COUNTY OF LOS ANGELES, etc., Petitioner, v. JOHN N. HUNT, etc., Respondent.

[1] ACQUISITION AND IMPROVEMENT ACT OF 1925 — INTENT — LEGISLATURE.—The controlling purpose of those who framed the Acquisition and Improvement Act of 1925 and of the legislature in its adoption was to provide a simplified and at the same time a comprehensive procedure for the acquisition and improvement of public ways, parks, and pleasure grounds, whether lying entirely within unincorporated territory of a county or within the territory of a municipality, or lying partly within such unincorporated territory and partly within one or more municipalities; or lying within two or more municipalities; or forming the exterior boundary of any municipality where the same joins unincorporated territory of a county or the territory of another municipality whether partly

198 Cal.—48

within or without such boundary; and for the payment of the costs and expenses of such acquisition and work of improvement and the issuance and payment of bonds therefor; and for such other purposes as may be necessary to carry into effect the main purposes and provisions of said act.

[2] ID.—NOTICE—DUE PROCESS—STATUTORY CONSTRUCTION.—The provisions of the Acquisition and Improvement Act of 1925 that the hearing at which property owners may appear and be heard as to their objections to the making or cost or details of the proposed acquisition or improvement or both shall be not less than fifteen nor more than sixty days from the date of the adoption of the resolution of intention to make such acquisition or improvement or both, and that notice thereof shall be given by publication and also by posting, are adequate to satisfy the requirements of due process of law; and a legislative body, acting under the provisions of said act, acquired jurisdiction to proceed by giving, on the day following the adoption of its resolution of intention, notice by both publication and posting that the date of hearing of objections to the proceeding was the fifteenth day after the adoption of such resolution.

[3] ID.—ASSESSMENTS—DISCRETION—CONSTITUTIONAL LAW.—The matter of committing discretion to local legislative bodies in fixing the limits of the assessment district and the mode of arriving at the amount of the assessment, as is done by section 10 of the Acquisition and Improvement Act of 1925, does not constitute an unwarranted delegation of legislative power.

[4] ID.—SECTION 10 OF ACT—STATUTORY CONSTRUCTION—DUE PROCESS. Section 10 of the Acquisition and Improvement Act of 1925, wherein the local legislative body is invested with power upon the hearing provided for in the preceding sections of the act, to determine the extent and boundaries of the assessment district and to finally fix the zones into which such district is to be divided for purposes of assessment and the percentages to be raised therefrom, and establish the grades for the contemplated improvement, sufficiently meets the legal requirements of due process of law as to the matters it is thus authorized to determine.

[5] ID.—CONDEMNATION OF LAND—PAYMENT—CONSTITUTIONAL LAW— STATUTORY CONSTRUCTION.—Read by and large and interpreted liberality, as the court is required to do, with a view to making effective the beneficent public purpose contemplated by their terms, sections 28 and 37 of the Acquisition and Improvement Act of 1925 are not violative of the spirit and intent of the constitution as to the plan provided in said sections for the condemnation of properties required in the course of the acquisition or improvement contemplated or for the payment and provision of means for payment of compensation for the properties thus to be taken.

[6] ID.—PUBLIC BODIES OR AGENCIES—EXEMPTIONS—CONSTITUTIONAL LAW.—The provisions of section 5 of the Acquisition and Improvement Act of 1925 to the effect that the properties of public bodies or agencies designated therein may, if. in use in the performance of a public function, be omitted from assessment, but that in order that they may be so omitted the resolution of intention of the legislative body in charge of the acquisition or improvements, or both, shall so determine and declare, are valid.

[7] ID.—ASSESSMENTS—SCHOOL PROPERTY—DISCRETION.—The inclusion of certain properties belonging to the school department in an assessment made under the provisions of the Acquisition and Improvement Act of 1925 is not in the nature of special legislation on the part of the legislative body having the proceedings in charge, since such legislative body has the power to classify the public properties within the assessment district according to their location and use and also according to the benefits to be derived from such public improvement, and. the power to thus classify necessarily carries with it a wide discretion as to its exercise; and in this proceeding in *mandamus* to compel a county treasurer to sign and issue certain bonds which had been ordered to be issued by the board of supervisors under the Acquisition and Improvement Act of 1925, the court is unable to say that the inclusion of certain school properties in the assessable property of the district was not properly responsive to its location, uses, or to the benefits to be derived by it from the making of the acquisition and improvement in question.

[8] ID.—PUBLIC IMPROVEMENTS—MUNICIPAL AFFAIRS—APPLICABILITY OF GENERAL LAWS.—When a general law of the state provides, as the Acquisition and Improvement Act of 1925 does, for a scheme of public improvement, the scope of which both intrudes upon and transcends the boundary of one or several municipalities, such contemplated improvement ceases to be a municipal affair and comes within the proper domain and regulation of the general laws of the state.

---

(1) 28 Cyc., p. 935, n. 19.   (2) 12 C. J., p. 1262, n. 6.   (3) 12 C. J., p. 859, n. 14.   (4) 12 C. J., p. 1263, n. 9.   (5) 20 C. J., p. 650, n. 8.   (6) 15 C. J., p. 420, n. 9.   (7) 12 C. J., p. 798, n. 48.   (8) 15 C. J., p. 536, n. 16.

PROCEEDING in Mandamus to compel the Treasurer of Los Angeles County to sign and issue bonds ordered pursuant to Acquisition and Improvement Act of 1925. Writ granted.

The facts are stated in the opinion of the court.

Edward T. Bishop, County Counsel, and Everett W. Mattoon, Chief Deputy County Counsel, for Petitioner.

Arthur M. Ellis for Respondent.

H. W. O'Melveny, *Amicus Curiae.*

RICHARDS, J.—The application herein is for a writ of mandate whereby the petitioner seeks to compel the respondent as treasurer of the county of Los Angeles to sign and issue certain bonds which had been ordered to be issued by the board of supervisors of said county under the provisions of an act of the legislature known as the "Acquisition and Improvement Act of 1925" (Stats. 1925, p. 849), and under section 28 of said act. The questions presented upon said application and upon the demurrer of the respondent to the sufficiency thereof involve primarily the constitutionality of said act, and, secondarily, certain alleged irregularities of procedure thereunder appearing upon the face of said application, but which do not affect the validity of the act itself.

[1] An examination of the aforesaid act of 1925 discloses that the controlling purpose of those who framed it and of the legislature in its adoption was to provide a simplified plan and at the same time a comprehensive procedure for the acquisition and improvement of public ways, parks, and pleasure grounds, whether lying entirely within unincorporated territory of a county or within the territory of a municipality, or lying partly within such unincorporated territory and partly within one or more municipalities; or lying within two or more municipalities; or forming the exterior boundary of any municipality where the same joins unincorporated territory of a county or the territory of another municipality whether partly within or without such boundary; and for the payment of the costs and expenses of such acquisition and work of improvement and the issuance and payment of bonds therefor; and for such other purposes as may be necessary to carry into effect the main purposes and provisions of said act. It is asserted by the petitioner, and is not denied or questioned by the respondent, that the object of this act is to embrace and combine within its provisions and procedure the accomplishment of

all of the various things relating to the acquisition and improvement of public ways, parks, and pleasure grounds, the accomplishment of which has heretofore been committed to a number of earlier statutory enactments; such as the Vrooman Act (Stats. 1885, p. 147) and its several amendments, the Improvement Act of 1911 (Stats. 1911, p. 730), the Municipal District Improvement Act (Stats. 1915, p. 99), the City Boundary Street Act (Stats. 1911, p. 1018), the Road District Improvement Act (Stats. 1907, p. 806), the Drainage District Improvement Act (Stats. 1919, p. 731), the Street Opening Act of 1889 (Stats. 1889, p. 70), the Opening and Widening Act of 1903 (Stats. 1903, p. 376), the County Street Opening Act of 1923 (Stats. 1923, p. 308), and possibly certain other and earlier enactments. The provisions of the act, in so far as they come under review in this proceeding, may be briefly summarized as follows: Section 1 thereof purports to confer jurisdiction upon the several legislative bodies of those political subdivisions wherein public improvements of the kind above indicated are contemplated, with power to proceed according to the method provided in subsequent provisions of the act. Section 2 thereof provides that, whenever public convenience may require the acquisition or improvement or both the acquisition and improvement of the aforesaid public ways or properties, the legislative body of the political subdivision wherein the same are situate may order the said acquisition or improvement thereof, or, if both the acquisition and improvement are desired, may provide by such order that both may be included and consummated in a single proceeding and that public ways already acquired, as well as the whole or any portion of such as are to be acquired under such proceeding, may be improved under such single proceeding; and that, in the course of such acquisition or improvement or both, authority, power, and jurisdiction are given to the legislative body or bodies thus proceeding to make the same, to issue, sell, and dispose of bonds representing the costs and expenses of such acquisition and improvement and to provide the funds for the payment of such bonds through the levy and collection of assessment taxes upon such districts and the property therein as may be established or in said act subsequently provided for as being affected by such improvement. The section proceeds at some length and

with much detail to provide that the legislative body of a county shall have jurisdiction to acquire and improve public ways within the boundaries of such county; and in cases where such acquisition or improvement as thus contemplated includes or extends over or connects with or renders of greater use to the public any public way or ways lying partly within such unincorporated territory of the county and partly within one or more municipalities, the consent of the municipal bodies of such municipality or municipalities shall first be obtained thereto and to the assessment of the property therein to be benefited thereby, the intent and meaning of this provision in said act being that the necessary jurisdiction and power for the consummation of such acquisitions and improvements shall be vested in, and that the proceedings therefor as provided in said act may be had and taken by, the legislative body either of the county or of any of such municipalities, the public interest and convenience of which is affected thereby, and that each of such legislative bodies shall have concurrent jurisdiction to initiate such proceedings, provided that the legislative body initiating the proceedings and adopting the resolution of intention therefor as in said act provided shall thereafter have exclusive jurisdiction of such proceeding or proceedings and of the acquisitions and improvements comprehended therein and to be consummated thereby. Section 3 of said act proceeds to define in detail the power and authority of the legislative body thus initiating and conducting such proceedings, which include the appointment of engineers and superintendents of work and of competent persons for the preparing and furnishing of such specifications as is later in detail provided for in said act, and of attorneys and of such other persons as may be required during the progress of such work, and to provide for the compensation of such officers and employees. Section 4 of said act provides for the designation of a county or municipal officer or some other competent person to prepare and furnish specifications for the proposed acquisition or improvement or both of such properties as the legislative body initiating such proceeding or proceedings may desire to acquire or improve; and provides what such specifications shall include. The order, therefore, is to precede the resolution of intention to make such acquisitions and improvements, which

said resolution is included in the terms of the succeeding section of said act. Section 5 of said act provides that, before ordering any such acquisitions or improvements or both, authorized by the terms of the act, the legislative body which initiates and is to conduct the proceedings shall adopt a resolution of intention so to do, which resolution shall refer to the public way acquired or improved or both, by its lawful or official name or by the name by which it is commonly known, or, if the same is yet to be acquired, by a name by which the same is to be called upon its acquisition, which name is thereby fixed and established, and shall also briefly describe such public way or right of way; and in case of acquisition such resolution shall describe the property necessary or convenient to be taken therefor. It shall be determined in said resolution that the public interest and necessity require the acquisition of such public way or right of way and of the property necessary to be taken therefor; and in case of its improvement said resolution shall also determine that the public interest and necessity require such improvement as is set forth in the resolution and shall briefly describe such improvement so as to state in general terms the class or kind of work contemplated, such as grading, paving, sewering, or other work of improvement, and give in general the location of the proposed improvement and refer to the plans and specifications therefor for a full and detailed description and location of such improvement and the grades to which said improvement is to be constructed. Said resolution shall specifically direct the notice of all persons affected by such improvement or improvements to the same and to the provisions of said act relating to grades; and shall also, in cases where the construction of the proposed improvement will result in a substantial change, considering existing physical conditions, with respect to the elevation of any abutting property to any public way as it will exist when thus improved to grade, particularly direct the attention of such owners of abutting properties to the fact of such substantial change in the elevation of their such properties in relation to such public way as it will exist when thus improved. If both acquisition and improvement are contemplated in the same proceeding one resolution of intention shall be sufficient for both purposes. The resolution of intention shall also contain a description

of the district of the lands to be benefited by such proposed acquisition or improvement or both, which shall be known thereafter and be referred to in said act as "The Assessment District." The description of the assessment district may be in general terms, referring to a plat or map approved by the legislative body conducting the proceeding, which shall be on file in the office of the clerk of such legislative body at the time of the adoption of such resolution of intention and which shall indicate by a boundary line the extent of the territory to be included in the proposed assessment district, which said plat shall govern for all details as to the extent thereof. Said resolution shall also contain a statement that, for the expenses of the things therein proposed to be done, bonds will be issued for the full amount of the same, excepting the amount, if any, to be contributed thereto by the county or municipality in money or by the furnishing of materials therefor, said bonds to be specifically described therein as to the interest thereon and time of payment thereof and as to the aggregate principal of said bonds and the time or times within which such bonds are to be redeemed, and the annual payments thereon to be made in the course of such redemption, and that a special fund shall be constituted for the payment of said bonds by the levy of special assessment taxes upon the lands within the assessment district, in accordance with the provisions of said act. Said section further provides for the exemption from such special assessment taxes of certain lands, such as those belonging to the United States or the state of California or its political subdivisions or educational, penal, or other public institutions as are particularly set forth in the resolution of intention as thus to be exempted from such special assessment tax. It is further provided in said section of the act that if, in the judgment of the legislative body conducting such proceeding, varying benefits are to be derived from the different parcels of land lying within such assessment district, it may provide that the said district be divided into zones, according to benefits, such zones to be as many in number as may be deemed necessary so as to include in each zone lands within the district which will be benefited in like measure. Such legislative body shall also determine the percentage of the sum to be raised each year from such special assessment

taxes which will be raised from the lands in each zone. These zones shall be designated by letters or numbers to be plainly shown upon the map or plat of the assessment district, and shall be referred to in the resolution of intention either by separate boundaries or by coloring or other convenient and graphic method, so that all persons interested may with accuracy ascertain within which zone any parcel of land is located. It shall be sufficient in the resolution of intention in case of the division of the assessment district into such zones to refer to said plat or map for the boundaries and all details concerning the same. Said section further provides that said resolution of intention shall contain a notice of a day, hour, and place to be fixed therein when and where any and all persons having any objections to the proposed acquisition or improvement, or both, to the proposed grades to which such improvement is to be constructed, to the extent of the assessment district, to the zones, if any, into which the same is to be divided, to the percentages of assessment taxes to be raised from each of said zones, or to any or all of the matters to be contained in said resolution of intention, shall appear and be heard before the legislative body conducting such proceeding. Said time shall be not less than fifteen nor more than sixty days from the date of the adoption of such resolution and shall be caused by the clerk of said legislative body to be published by at least two insertions. Section 6 of said act provides that the legislative body having power by its resolution of intention to establish the grades to which any improvements provided for therein shall conform shall also have power to modify or change such adopted grades at the hearing provided for in such resolution of intention either with or without the objections of property owners included within said assessment district, and the failure to make such objections shall be deemed to be a waiver on the part of such property owners of all objections to such grades as originally established or as thus modified or changed and a bar to all claims for damages therefor or to any action looking to the prevention of such work or improvement or to the recovery of damages on account thereof. Section 7 of said act provides for the determination by the legislative body conducting such proceedings as to what, if any, part of the expenses of the acquisition or improvement, or both, of the

properties required for such public purpose shall be paid out of the treasury of the county or municipality, as the case may be, and that such payment may be made out of the general fund of such county or municipality or from any other fund available for such purpose. In the event that the proposed acquisition or improvement, or both, under such proceeding includes any acquisition or improvement, or both, within the territory of a county or of any municipality or municipalities for which the legislative body conducting such proceeding does not function, the legislative body of such county or municipality may determine that any part of the expense of such acquisition or improvement, or both, provided for in such proceeding, shall be paid out of its treasury, or that any materials purchased therefor shall be paid therefrom or from any of its funds available therefor, which determination shall be expressed by the resolution of such legislative body and shall be transmitted to the legislative body conducting such proceeding, and shall thereby create a liability on the part of the county or municipality so resolving to furnish such proportion of such expenses or materials as are provided for therein. The resolution of intention of the legislative body conducting such proceeding shall set forth the fact that such expenses or materials or both are to be thus furnished and paid for. Section 8 of said act provides that after the adoption of the resolution of intention the superintendent of work shall cause to be posted along the line of the contemplated acquisition or improvement notices of adoption of said resolution, at specified distances, and which shall be conspicuously entitled "Notice of Improvement," and which shall contain certain specified facts relating to the adoption and contents of said resolution of intention. Said notices shall also contain a statement of the hour, day, and place when and where any and all persons having any objections to the proposed acquisition or improvement, or both, or to any of the matters contained in said resolution of intention, may appear before said legislative body and be heard. Said legislative body may also, if it deems advisable, direct the clerk thereof to mail copies of such notices to the owners or reputed owners of property within such assessment district, but the failure to do so shall not in any way affect the validity of such proceedings. Section 9 of said act provides for the procedure

before such legislative body at the time set for hearing such objections as are provided for in the preceding section and for such hearing thereon. Section 10 of said act provides that at the conclusion of such hearing such legislative body, as a determination of all questions arising thereat, shall by resolution declare its finding thereon, embodying such changes or modifications as may be made as a result of such hearing as to the extent and boundaries of the assessment district or as to the zones, if any, in which the same is divided, or as to the percentage of the amount to be paid by each zone of the special assessment taxes for such work and in the grades therein provided for. If any such modifications or changes are thus made the plat or map of the assessment district shall be so amended as to show such modifications and changes in the boundaries of said district or the zones thereof or of the percentages of cost to be raised from each zone or in the grades provided for in the resolution of intention; and the boundaries, zones, percentages, and grades as thus finally determined shall be established and prevail throughout all the later stages of such proceeding, including the issuance and final payment of the bonds therefor, and such finding and determination of such legislative body thereon shall be final and conclusive. Sections 11, 12, 13, 14, and 15 of said act provide for proceeding with such work or acquisition or improvement, or both, for the issuance of notice and the receipt of bids therefor, for the conditions of such bidding and of the award or awards of contracts therefor, and for the publication of notice of such award or awards by the clerk of the legislative body making the same. Section 16 provides that at any time within ten days from the date of the first publication of such notice any property owner or any other person interested in any parcel of land within the boundaries of the assessment district who claims that any of the previous acts or proceedings relating to such acquisition or improvement are irregular, defective, erroneous, faulty, or invalid for any reason, may file with the clerk a written notice specifying in what respects such proceedings are thus erroneous, irregular or invalid, the intent of the section being that any person failing to file such notice shall be deemed to have waived such objections and shall be estopped from thereafter raising the same. Sections 17, 18, 19, 20, and 21 of said act provide for the execution by the superintendent

of work of the contract or contracts to the awardee or awardees of the same, for the contents of such contract or contracts and for the bond or bonds to be given by the latter for the faithful performance of the same, and for the time and manner of the progress and completion of the work to be done under such contract or contracts, and for the procedure in event of the filing and enforcement of liens of mechanics, materialmen, or laborers on account of such work and for the duties of the officers of the said legislative body in respect to the same and the satisfaction thereof.  Section 22 of said act provides that as soon as the work so provided. for to be done has been done in good faith and there shall have been filed with the clerk of the legislative body conducting such proceeding a declaration signed and verified by the superintendent of work that such work has been completed, such legislative body shall thereupon fix a day and hour and place for and direct notice to be given of a hearing for the purpose of determining whether or not such work or improvement shall be accepted as having been completed according to such contract or contracts, and of furnishing an opportunity for all persons interested in or affected by such work or improvement, or feeling aggrieved by any act or determination done or made in the course of such proceeding, or claiming any irregularities therein or in the progress thereof, which such persons may still be entitled to urge, to appear and set forth their said claims.  Such hearing shall be known as the final hearing upon the improvement and the notice thereof shall be phrased and published as set forth in. detail in said section.  Section 23 of said act provides for the procedure upon such hearing and upon any objections which may be presented and urged thereat.  Section 24 provides that when such hearing shall have been concluded said legislative body shall then determine whether such work has been substantially completed and performed and whether the same shall be accepted and paid for as provided in said contract or contracts therefor and in the manner provided by the previous resolutions and orders of such body.  The section further provides that such legislative body may thereupon remedy and correct any error or informality in the proceedings and revise and correct any act or determination relative thereto or to the work or improvement per-

formed thereunder, and that all decisions and determinations of such legislative body had upon notice and hearing as aforesaid shall be final and conclusive upon all persons entitled to be heard during the progress of the proceedings as to any errors, informalities, irregularities, omissions, and defects therein, and that no assessment taxes levied or bonds issued or to be issued for such work or improvement shall be held invalid by any court for any such errors or irregularities or other defects where the resolution of intention has been actually published as in this act provided before such legislative body shall have ordered such work or improvement performed.  The remaining sections of said act up to section 47 thereof relate to the issue and reissue of bonds on account of such work and improvement and the collection by suit or otherwise of the payment due thereon, and to the condemnation of such properties as may be required for the acquisition or improvement provided for in said act, and for the issuance of bonds to provide for the payment therefor in the course of such condemnation proceedings.  Sections 47, 48, and 49 of said act refer to the procedure of such legislative body and to the method and detail for the making of such publications of the orders, notices, and other proceedings thereof as have theretofore been provided for in said act.  Section 50 of said act refers to the definition of the words, terms, and phrases used therein, while sections 51 and 52 have reference to the effect and interpretation to be given to the provisions of the act as a whole.  Section 53 gives the title by which the act shall be known and designated as ''Acquisition and Improvement Act of 1925.''

We have thus summarized at considerable length the provisions of this act in order to aid in clarifying the discussion of the objections which are urged to its validity.  It is conceded by the respondent herein that the various steps and proceedings required by the terms of the act to be taken in the course of the proceedings providing for such acquisition and improvement and of the condemnation proceedings preliminary thereto in the course of which the bond issue involved in this proceeding has been ordered were regularly taken in conformity with the requirements of said act.  His main objection goes to the procedure provided for in said act for imposing the burden of paying for the acquisitions or improvements or both, for which provision is at-

tempted to be made therein, upon the property owners within the district to be affected by the acquisition or improvement. [2] His first objection to that procedure seems to be that the act is indefinite in relation to the period of time required for the publication of the resolution of intention prior to the date fixed for the first hearing thereon at which property owners may appear and be heard as to their objections to the making or cost or details of the proposed acquisition or improvement or both. The respondent cites no authority in support of this particular objection, nor are we referred to any cases holding that in the statute itself the precise length of time required for notice to those interested in the particular proceeding must be specified. All that is apparently required is that such persons shall be given such reasonable notice in the manner provided by the statute as to enable them to appear at the designated place and time of the hearing to make their objections, if any, to the acquisition or improvement contemplated in the resolution of intention, or to the form or substance of the resolution. Section 5 of the act in question provides that the time of such hearing shall be not less than fifteen nor more than sixty days from the date of the adoption of such resolution, and that notice thereof shall be given by publication. Section 8 of the act provides also for posting notices of the adoption of the resolution, which may consist of printed copies thereof stating the day, hour, and place when and where such hearing is to be had and such objections, if any, considered. The statute evidently contemplates that these notices by both publication and posting shall be given by the clerk immediately upon the adoption of the resolution. In the instant case it is conceded that such notices were given on the day following the adoption of the resolution, viz., on November 9, 1925, and that the date of hearing was therein noticed for November 23, 1925. We are of the opinion that the statutory provisions for notice are adequate to satisfy the requirements of due process of law and that the legislative body in question acquired by the notices actually given jurisdiction to proceed. (*Tarpey* v. *McClure*, 190 Cal. 593 [213 Pac. 983]; *Huntley* v. *Board of Trustees*, 165 Cal. 298 [131 Pac. 859].)

The next contention of the respondent is as to the mode of fixing the amount of assessments provided for in section 10

of the act.   [3]   The gravamen of the respondent's conten-
tion seems to be that while the legislature itself might in the
body of its act have laid down the rule for fixing the limits
of the assessment district and the mode of arriving at the
amount of the assessment, it could not delegate these func-
tions to a subordinate legislative body as it has undertaken
to do in this act.   While it may be true that in the Road
District Act of 1907 the former method was pursued, we are
not pointed to any authority which holds that the latter
method may not be availed of, provided the principles govern-
ing due process of law are adhered to.   In the case of
*Thomas* v. *Pridham,* 171 Cal. 98 [153 Pac. 933], wherein the
provisions and validity of the Road District Improvement
Act of 1907 were the subject of review, it being contended
in that case that the said act was unconstitutional in per-
mitting assessments of property within the districts to be
formed under it to be made *ad valorem* instead of as to
benefits; this court, however, basing its decision upon the
very early case of *Emery* v. *San Francisco,* 28 Cal. 372, as
approved in the case of *In re Madera Irr. Dist.,* 92 Cal. 325
[27 Am. St. Rep. 106, 14 L. R. A. 755, 28 Pac. 272], and
also upon the reasoning of the supreme court of the United
States in *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 176 [41
L. Ed. 369, 17 Sup. Ct. Rep. 56, see, also, Rose's U. S. Notes],
held that the legislature was authorized to apportion the
amount of money to be raised in order to meet the expenses
of the improvement according to either the *ad valorem* or
assessment according to benefits plan, or to adopt any prin-
ciple of apportionment which might be devised under the
sovereign power of taxation.   In *Fallbrook Irr. Dist.* v.
*Bradley, supra,* it was said, as quoted in *Thomas* v. *Pridham,
supra:* "Assume that the only theory of these assessments
for local improvements upon which they stand is that they
are imposed on account of the benefits received, and that no
land ought in justice to be assessed for a greater sum than
the benefits received by it, yet it is plain that the fact of the
amount of benefits is not susceptible of that accurate de-
termination which appertains to a demonstration in geometry.
Some means of arriving at this amount must be used, and
the same method may be more or less accurate in different
cases involving different facts.   Some choice is to be made,
and where the fact of some benefit accruing to all the lands

has been legally found, can it be that the adoption of an *ad valorem* method of assessing the lands is to be held a violation of the federal Constitution? It seems to us clearly not. It is one of these matters of detail in arriving at the proper and fair amount and proportion of the tax that is to be levied on the land with regard to the benefits it has received, which is open to the discretion of the state legislature, and with which this court ought to have nothing to do. The way of arriving at the amount may be in some instances inequitable and unequal, but that is far from rising to the level of a constitutional problem and far from a case of taking property without due process of law." If, as above stated, the matter of arriving at the proper basis of assessment is a mere matter of detail open to the discretion of the state legislature itself, we can perceive no reason why it might not commit such discretion to local legislative bodies possessed with knowledge of the identical local situation and invested with power to proceed with the needed improvement. [4] The chief objection which the respondent appears to make to the procedure provided in section 10 of this act, wherein the local legislative body is invested with power upon the hearing provided for in the preceding sections thereof, to determine the extent and boundaries of the assessment district and to finally fix the zones into which such district is to be divided for purposes of assessment and the percentages to be raised therefrom, and establish the grades for the contemplated improvement, is that upon such hearing in advance of the doing of any actual work of improvement or of the awarding of any contract or contracts therefor it would be impossible for either the legislative body or the protesting property owner to know what burden each particular piece of property was to bear; and that by the time the facts were ascertained by the actual completion of the work under contemplation the time of the property owner to make an intelligent objection thereto would have long since expired. It is argued, therefore, that the requirements of due process of law are not complied with by such preliminary hearing and by the merely speculative determinations of the legislative body thereat. It is to be remembered, however, that the provisions of the act in its earlier sections contemplate the careful preparation of plans and specifications of the improvement to be entered upon, embracing and delineating

the boundaries of the assessment district and the various zones thereof, and the grades upon the basis of which the work is to be done, the estimated cost of such work, the approximate portion of the burden of expense which shall be laid upon each particular zone and the basis of the assessment taxes to be imposed for the purpose of meeting such burden. In its foregoing provisions the act in question follows generally, though more liberally, the similar plan provided for in the Road District Improvement Act of 1907, which was expressly upheld by this court in the case of *Thomas* v. *Pridham, supra,* and in which the supreme court of this state, both upon the main hearing and upon the rehearing, determined amounted to due process of law. The decision in that case has been followed in *Dillingham* v. *Welch,* 179 Cal. 656 [178 Pac. 512], and *Swall* v. *County of Los Angeles,* 42 Cal. App. 758 [184 Pac. 406]. That the plan of subdividing assessment districts into subdistricts or zones for the purpose of equitably distributing the burdens of the assessment has also been adopted and approved in other jurisdictions. (See *Embree* v. *Kansas City Road District,* 240 U. S. 242 [60 L. Ed. 624, 36 Sup. Ct. Rep. 317, see, also, Rose's U. S. Notes] ; *City of Denver* v. *Kennedy,* 33 Colo. 80 [80 Pac. 122, 467].) We are therefore of the opinion that section 10 of said act, providing for the determination of the matters to be inquired into at the hearing held in accordance therewith and with the notices of such hearing provided for in the preceding sections of the act, is not subject to the objections urged by the respondent, and that as to the matters thus determined its provisions sufficiently meet the legal requirements of due process of law.

[5] The next contention of the respondent is that the provisions of the act with relation to the issuance and sale of bonds against lands of a district adjacent to the property to be condemned for the purpose of obtaining the money necessary to make the required deposit in court in order to obtain immediate possession of the lands to be condemned are contrary to the spirit and intent of the state constitution. The sections of the act thus assailed are sections 28 and 37 thereof, which in substance provided that in cases where the condemnation of any property needed in the course of the contemplated acquisition or improvement, or both, has been determined upon and appropriate proceedings to accomplish

such condemnation have been initiated and prosecuted to the point of an order for possession as is provided for in the constitution and statutes relating to the exercise of eminent domain, upon the entry of such order for possession, providing, as it may, for the taking of immediate possession of the property sought to be condemned, upon the payment into court of the amount or amounts required by the terms of the constitution and statutes to the owner and persons interested in the property thus to be taken, the legislative body conducting the proceeding shall fix a day, hour, and place for a hearing upon the matter of the issuance of bonds against the assessment district for the purpose of obtaining the amount or amounts set forth in said order for possession as thus required to be so deposited, of which hearing all persons owning property within the assessment district shall be given notice as provided in said sections of the act, and at which these may appear to urge whatever reasons they may have why such bonds should not be issued. The sufficiency of the notice thus required and given in the instant proceeding is not called in question by the respondent herein, but he argues that the provisions of article I, section 14, of the state constitution, as amended in the year 1918, which relate to the payment into court in condemnation proceedings of such amounts as the court may determine to be reasonably adequate to secure to the owners of the property sought to be condemned immediate payment of just compensation for such taking, including damages and costs, has been in some manner violated. We look vainly through that article and section of the constitution, however, for any limitation upon the ways or means to be adopted by the public or *quasi*-public institution seeking such condemnation in providing the funds wherewith to make such payment, nor do we perceive any sufficient reason lying in any constitutional limitation why the legislative body which is invested with power to proceed to make the acquisition or improvement in question and to issue bonds for the expenses thereof may not adopt any practical method open to it for obtaining the needed means to enable it to proceed with such acquisition or improvement required in advance thereof in order to obtain possession of the property to be taken in the course thereof. In point of fact the provisions of said article and section of the constitution, by its amendment in said year,

providing for such immediate possession, implies that the municipality or other public body thus permitted to take such possession of property sought to be condemned must obtain from some source the means for making the required payments into court.  Whether such means are to be drawn from the general or some specific fund of the public body seeking such condemnation, or from money to be borrowed by it in accordance with those methods which are provided by law for the creation of an indebtedness, is quite immaterial, since the property owners of the district to be benefited by such acquisition or improvement must eventually, in one form or other, bear the burden of the cost of such acquisition or improvement.  The argument of the respondent seems to be that the spirit and intent of the constitutional provision is violated by virtue of the long delay which must occur in the course of carrying into effect the resolution of the legislative body condemning the property in question with relation to the issuance and sale of bonds until the consummation of which the payment into court of the sums provided for in the interlocutory decree cannot be made; but this does not appear to us to be vital, since until such payment into court has been made the owner thereof cannot be required to yield up its possession.  It may be that some added burdens in the way of interest upon the adjudged amounts may by the act be laid upon the property owners of the district, but this consequence would seem to be inevitable in view of the fact that the district has at the outset no money or the practical means of getting any with which to proceed with the work of acquisition or improvement except by the process of issuing bonds.  Read by and large and interpreted liberally, as we are required to do in respect to acts of this character, with a view to making effective the beneficent public purpose contemplated by their terms, we do not find that the provisions of this act thus brought into question are violative of the spirit and intent of the constitution as to the plan provided therein for the condemnation of properties required in the course of the acquisition or improvement contemplated or for the payment and provision of means for payment of compensation for the properties thus to be taken. We find no merit, therefore, in the respondent's aforesaid contention.

[6]   The next contention of the respondent is that the provisions of section 5 of said act, permitting the legislative

body in charge of the acquisitions or improvements, or both, contemplated by said act to assess or to exempt from assessment lands belonging to certain public bodies, are violative of the provisions of article I, section 11, and article IV, section 25, subdivision 33, of the state constitution. These two provisions of the constitution, however, only embody the requirements of the organic law that "all laws of a general nature shall have a uniform operation" and that special laws shall not be enacted "where a general law can be made applicable." In the case of *City Street Improvement Co.* v. *Regents, etc.*, 153 Cal. 776 [18 L. R. A. (N. S.) 451, 96 Pac. 801], it was held that the general rule exempting the lands of public agencies from taxation applied only to general state, county, and municipal taxes, and did not extend to the exemption of such agencies from local assessment for street improvements. In the very recent case of the *City of Fresno* v. *Fresno Irr. Dist.*, 72 Cal. App. 503 [237 Pac. 772], it was held that lands of a municipality lying within an irrigation district might be assessed for the special purpose for which the district was formed, in the absence of an express or implied exemption of such lands in the statute creating such district; and in that case it was held that there was such implied exemption. But section 5 of the act in question, instead of expressly or impliedly exempting the properties of public bodies or agencies designated therein from assessment for the purposes provided for in the act, expressly provides that such properties may, if in use in the performance of a public function, be omitted from such assessments, but that in order that they may be so omitted the resolution of intention of such legislative body shall so determine and declare. There is ample authority in other jurisdictions for the proposition that such provisions in statutes providing for special assessments for local improvements are valid. (*County of Adams* v. *Quincy*, 130 Ill. 566 [6 L. R. A. 155, 22 N. E. 624]; *County of McLean* v. *Bloomington*, 106 Ill. 209; *Edwards, etc.* v. *Jasper Co.*, 117 Iowa, 365 [94 Am. St. Rep. 301, 90 N. W. 1006]; *Board of Commrs., etc.*, v. *Ottawa*, 49 Kan. 747 [33 Am. St. Rep. 396, 31 Pac. 788]; *City of Kalispell* v. *School Dist.*, 45 Mont. 221 [Ann. Cas. 1913D, 1101, 122 Pac. 742]; *Seattle School Dist.* v. *City of Seattle*, 44 Wash. 62 [12 Ann. Cas. 417, 86 Pac. 1117].) In the case of *Reclamation Dist. No. 1500* v. *Superior Court*, 171 Cal. 672 [154 Pac. 845], the general

subject of the power of the legislature over the properties of public agencies was exhaustively considered and the principle was therein educed that the legislature for purposes of public improvement may impose such burdens upon such properties as to it may seem just, and that such public agencies have no private or proprietary interest in such properties as against the state.   [7]   The respondent, while apparently conceding the soundness of this principle, makes the contention that the inclusion of certain properties belonging to the school department in the assessment in ques-. tion in the instant case was in the nature of special legislation on the part of the legislative body having the proceedings in question in charge.   The answer made to. this contention is that the legislative body having the particular acquisition and improvement in charge had power to classify the public properties within said assessment district according to their location and use and also according to the benefits to be derived from such public improvement, and that the power to thus classify necessarily carried with it a wide discretion as to its exercise.   Such was the ruling of. this court in the case of *Martin* v. *Superior Court,* 194 Cal. 93, 101 [227 Pac. 762], wherein it was held that where the, authority and duty to ascertain the facts which will justify a particular classification is vested in a legislative body, every intendment is in favor of the validity of its action and the legislative classification will not therefore be disturbed. unless it is palpably arbitrary in its nature, and neither. founded upon nor supported by reason.   We are unable to say in the instant case that the inclusion of the school properties in question in the assessable property of the district was not properly responsive to its location, uses, or to the benefits to be derived by it from the making of the acquisition and improvement in question.   It may be noted that under other provisions of the act this method of payment of the burdens laid upon such classes of public property as are to be subjected to this assessment is fully provided for and that the same involves no loss of such properties to the public service or use to which they are devoted.

[8]   The next contention on the part of the respondent is that the county of Los Angeles through its legislative body in charge of said work involving, as it does, the condemning of property, establishing street grades, making street improvements, and assessing property therefor within the city

of Los Angeles, is violative of the provisions of article XI, sections 6 and 8, of the constitution, and also the provisions of the charter of the city of Los Angeles. This contention is predicated upon the proposition that the condemnation of property for street purposes and its improvement is a municipal affair and that when such property lies within the limits of the city of Los Angeles its condemnation and improvement cannot be subjected to the control of general laws. This contention would seem to be quite fully answered in principle by the decision in the case of *Gadd* v. *McGuire*, recently decided by the district court of appeal (69 Cal. App. 347 [231 Pac. 754]), for while it is true that in the instant case the city of Los Angeles was not, as in that case, an immediate actor in making the improvements in question, it is also true that the provisions of the constitution and of the charter of Los Angeles, upon which the respondent relies herein, were fully considered therein. In so considering these and applying them to the facts of that case the court very aptly and correctly held that, "It is true that the charter of the city of Los Angeles contains an express grant of power to make street improvements and to provide that the costs and expenses thereof shall be a lien upon the abutting property or on property in districts benefited thereby. But it also is expressly declared in that instrument that these powers shall be 'supplemental, additional and alternative powers to those conferred upon municipalities by the general laws of the state of California.' (Subds. 13 and 19 of sec. 2, art. I, of the Charter; Stats. 1919, pp. 1432, 1433; Stats. 1921, pp. 1802–4.) By thus declaring that the powers granted by the charter with respect to street improvements are 'supplemental, additional and alternative' to such powers as may likewise be conferred upon municipalities by general laws, there is evidenced an unmistakable intention on the part of the charter-makers to confer upon the city authorities the right to elect either to exercise the powers which are expressly granted to the city by its organic law, and to proceed as therein provided, or to exercise those powers which are granted to all municipalities of the state by general laws, and to proceed as in those laws prescribed." We can perceive no real distinction between the application of the foregoing reasoning to that case and to the case at bar, and we are further of the opinion, as was held in the foregoing case, that when a general law of the

state provides, as the act in question does, for a scheme of public improvement, the scope of which both intrudes upon and transcends the boundary of one or several municipalities, such contemplated improvement ceases to be a municipal affair and comes within the proper domain and regulation of the general laws of the state.

The remaining contentions of the respondent involving, as they do, objections to alleged defects in the particular proceeding under review and not to the validity of the act itself, are, we think, sufficiently answered by the briefs of the petitioner and do not require separate or further prolonged consideration.

Let the writ issue as prayed for.

Waste, C. J., Cashin, J., *pro tem.,* Curtis, J., and Seawell, J., concurred.

SHENK, J., Concurring.—I concur. Something further, however, should, in my opinion, be said concerning the practical operation of certain features of the act. First, as to the notice of presenting and hearing objections: Under section 5 the resolution of intention must contain a notice of the time and place when objections may be presented and heard. The time must not be less than fifteen nor more than sixty days from the date of the adoption of the resolution—not from the publication of the notice. The resolution must be published by at least two insertions, and the publication may be made in a daily newspaper. It is thus made possible for the entire publication to be commenced and completed within two days before the time appointed for hearing objections. Obviously, a two days' notice would not constitute such a reasonable notice as would satisfy the requirements of due process. Again, at the time set for the hearing the property owner must present his objections to the proposed acquisition or improvement, to the proposed grades to which the improvement is to be constructed, to the extent of the assessment district, to the zones into which the assessment district is to be divided and to the percentages to be raised from each of said zones. If the property owner does not object at the time appointed he is cut off from objecting to any of the proceedings taken under the act, including the right to object

to the construction of the improvement to the official grade fixed by the legislative body. The construction of the improvement to the official grade may cause vast damage to him by reason of cuts or fills, or both, and there is no provision in the act for compensating him on account of thus taking or damaging his property for public use. The provisions of the statute in this respect would seem to be incomplete and inadequate. And again: The legislative body may issue and sell bonds sufficient to make a required deposit in court in the event lands are to be condemned in the course of the proceeding. These bonds become an immediate charge on the property in the district, and the property owner is barred by the terms of the act from contesting any tax levy to pay for the same. Yet the property sought to be condemned may never be acquired by reason of the abandonment of the proceedings as authorized by the act. The property owner is then in the position, so far as the statute is concerned, of being required to pay off a bond issue for which no property has been acquired and no improvement constructed, since there is no provision in the act for retiring the bond issue in the event of the abandonment of proceedings. But, quite apart from the foregoing considerations, the fourteen days' notice of the time and place to present objections, given in the present case, would seem to be sufficient, and the proceedings involved herein are not affected by the other provisions of the act to which I have referred.