[S. F. No. 12518. In Bank.—June 6, 1927.]

# THE ALLIED AMUSEMENT COMPANY OF LOS ANGELES (a Corporation) et al., Petitioners, v. H. L. BRYAM, Treasurer, etc., Respondent.

[1] ACQUISITION AND IMPROVEMENT ACT — DESCRIPTION OF LAND — ERROR IN COURSE — MONUMENT CONTROLLING. — In a proceeding instituted under the Acquisition and Improvement Act of 1925 (Stats. 1925, p. 849), for the opening of a place partly within and partly without a city, an error in the description of the land in the publication of the initial resolution of intention ordering the acquisition of the property required for the improvement, in reading "thence northeasterly in a direct line to the point of beginning," instead of "thence northwesterly in a direct line to the point of beginning," is harmless, where the "point of beginning" is accurately and correctly established, both in the resolution and in the published notice, as this point is in effect a monument and controls the word of course or direction.

[2] ID. — JURISDICTION. — A county, or its officers, having acquired jurisdiction to proceed, under the Acquisition and Improvement Act of 1925, for the opening or improvement of highways partly within a municipality and partly in unincorporated territory within the county, and having proceeded to the point of issuing the necessary bonds for the consummation of the project, does not lose jurisdiction when, by reason of subsequent annexation proceedings, all the territory in the district is included within two cities.

[3] ID.—POWERS AND LIABILITIES OF MUNICIPALITIES—POWER OF LEGISLATURE.—In the absence of any constitutional restriction, the legislature has the absolute power over the organization, the extent, and the powers and liabilities of municipal and other public cor-

---

3.  See 19 R. C. L. 730; 18 Cal. Jur. 775.

porations established as agencies of the state for purposes of local government.

[4] ID.—PUBLIC IMPROVEMENTS—IMPROVEMENTS WITHIN AND WITHOUT A MUNICIPALITY — MUNICIPAL AFFAIRS—APPLICATION OF GENERAL LAWS.—When a general law of the state provides for a scheme of public improvement, the scope of which both intrudes upon and transcends the boundary of one or several municipalities, such contemplated improvement ceases to be a municipal affair and comes within the proper domain and regulation of the general laws of the state.

[5] ID.—PURPOSE OF ACT—CONSTRUCTION.—The controlling purpose of the Acquisition and Improvement Act of 1925 was to provide a simplified plan, and, at the same time, a comprehensive procedure, for the acquisition and improvement of public ways, parks, and pleasure grounds, whether lying entirely within unincorporated territory of a county or within territory of a municipality, or lying partly within such unincorporated territory and partly within one or more municipalities, or lying within two or more municipalities, or forming the exterior boundaries of any municipality where the same joins unincorporated territory of a county or the territory of another municipality, whether partly within or without such boundary.

[6] ID. — INITIATION OF PROCEEDINGS — CONCURRENT JURISDICTION. — Under the Acquisition and Improvement Act of 1925, the county and any municipality in which the public interest or convenience is affected thereby have concurrent jurisdiction to initiate such proceedings, and the body initiating proceedings has exclusive jurisdiction of the proceeding and of all acquisitions and improvements comprehended therein for the purposes of consummation of the same.

---

(1) 20 **C. J.**, p. 1119, n. 21.   (2) 43 **C. J.**, p. 139, n. 44 New, p. 140, n. 58.   (3) 43 **C. J.**, p. 78, n. 65, p. 80, n. 7, p. 139, n. 28, p. 269, n. 9.   (4) 43 **C. J.**, p. 284, n. 92 New.   (5) 28 **Cyc.**, p. 954, n. 88.   (6) 28 **Cyc.**, p. 954, n. 88.

APPLICATION for a Writ of Mandate to compel the Treasurer of Los Angeles County to issue certain street improvement bonds. Writ granted.

The facts are stated in the opinion of the court.

Overton, Lyman & Plumb and Tanner, Odell & Taft for Petitioners.

E. W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Respondent.

WASTE, C. J.—Petitioners have applied for a writ of mandate, to be directed to the respondent Bryam, as treasurer of the county of Los Angeles, commanding him to execute and issue certain bonds in a street improvement proceeding in the county, instituted under the Acquisition and Improvement Act of 1925, commonly called the "Mattoon Act." The constitutionality of the act (Stats. 1925, p. 849) was upheld in *County of Los Angeles* v. *Hunt,* 198 Cal. 752 [247 Pac. 897]. In a proceeding known as "In the Matter of Acquisition and Improvement District No. 24, of the County of Los Angeles," matters have progressed up to the time the issuance of the bonds authorized thereby is to be had through the action of the respondent, in his capacity as treasurer of Los Angeles County. He has refused to proceed until certain questions which may affect the legality of the bonds, if issued, have been settled by this court. The matter comes before us on a general demurrer to the petition.

The board of supervisors of the county of Los Angeles, under the Acquisition and Improvement Act, initiated a proceeding for the opening of Washington place, partly within and partly without Culver City. At the time of the initiation of the proceeding the district to be assessed for the costs and expenses of the improvement, known as Acquisition and Improvement District No. 24, and the lands to be acquired, consisted in part of a portion of Culver City, and the balance of the district, and the remainder of the lands, were unincorporated territory of the county of Los Angeles. Having obtained jurisdiction, and proceeded under the statute until such step was next in order, the board of supervisors caused condemnation proceedings to be commenced in the superior court of Los Angeles County, for the purpose of acquiring the lands needed for the opening and widening of the street. The action was duly prosecuted to judgment, and an interlocutory decree in condemnation entered. Thereupon the board adopted a resolution authorizing and directing the county treasurer to issue bonds of Acquisition and Improvement District No. 24 in the sum of $260,928.93. Pursuant to such direction, the treasurer published a notice offering the bonds for sale, and on May 6, 1927, the date specified in the notice, accepted the bid of Brown-Crummer Company, one of the petitioners, therefor.

Prior to the acceptance of the bid all of the unincorporated territory included within Acquisition and Improvement District No. 24 was annexed to the city of Los Angeles. Because of the existing situation, the treasurer refused to go forward with the sale, or to execute or to deliver the bonds, upon the ground that the county of Los Angeles and its officers had lost jurisdiction of the proceedings, and were deprived of power to issue the bonds by reason of the fact that the district erected and to be assessed for their retirement is, at this time, entirely within the cities of Los Angeles and Culver City.

[1]   But two questions are presented for our consideration. The first relates to an inadvertent error in the publication of the initial resolution of intention, ordering the acquisition of the property required for the improvement. As adopted by the board of supervisors, the last call in the description of "That portion of the 182.14 acre parcel of land allotted to Francisco and Dolores Machado in the partition of the Rancho La Ballona," read, "thence *northeasterly* in a direct line to the point of beginning." In publishing the notice required by the act, the call read: "thence *northwesterly* in a direct line to the point of beginning." [Italics added.] Otherwise the description was correctly published. The error was harmless. The "point of beginning" having been accurately and correctly established, both in the resolution and in the published notice, was, in effect, a monument, and the words in the last call, "thence . . . in a direct line to the point of beginning," controlled the word of course or direction. The error in publication can, therefore, be safely disregarded, for it is inconceivable that it in any way misled the owners of the property sought to be acquired, or the public generally.

[2]   The other question submitted for decision is whether or not a county, or its officers, having acquired jurisdiction to proceed, under the Acquisition and Improvement Act of 1925, for the opening or improvement of highways partly within a municipality and partly in unincorporated territory within the county, and having proceeded to the point of issuing the necessary bonds for the consummation of the project, lose jurisdiction when, by reason of subsequent annexation proceedings, all the territory in the district is included within two cities. Respondent's position rests upon

the principle of law (so well established that we deem it unnecessary to cite the authorities), that there cannot be, at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdiction, and privileges, and that, ordinarily, and as a general rule, when a public corporation, holding limited powers, is annexed to a municipality which possesses all of the powers of the corporation which has been annexed, and wider powers in addition, the annexing city takes over the functions of the limited corporation, and its powers and duties in such territory are thereupon extinguished. [3] He cites *In re East Fruitvale Sanitary District,* 158 Cal. 453 [111 Pac. 368], in support of his position, but is driven to admit, as was held in that case, that, in the absence of any constitutional restriction, the legislature has the absolute power over the organization, the extent, and the powers and liabilities of municipal and other public corporations established as agencies of the state for purposes of local government. "What shall be the effect," says the author of the opinion (p. 457), "of the enlargement or diminution of the boundaries of such corporations, or of the consolidation of two into one, or of the annexation of the territory of one into another, is a question to be answered by a determination of the legislative intent." While there is no direct provision in the Acquisition and Improvement Act of 1925 expressing the intention of the legislature as to what must follow when situations arise like that in the instant case, a study of the act as a whole, and of the scope of its provisions as to jurisdiction and procedure, leaves little doubt in our minds on that question.

In our former opinion (*County of Los Angeles* v. *Hunt, supra*), Mr. Justice Richards, speaking of the extent to which proceedings may be carried under the terms of the act, said: [4] "When a general law of the state provides, as the act in question does, for a scheme of public improvement, the scope of which both intrudes upon and transcends the boundary of one or several municipalities, such contemplated improvement ceases to be a municipal affair and comes within the proper domain and regulation of the general laws of the state." [5] The controlling purpose of those who framed the act, and of the legislature in its adoption, was to provide a simplified plan, and, at the

same time, a comprehensive procedure for the acquisition and improvement of public ways, parks, and pleasure grounds, whether lying entirely within unincorporated territory of a county or within territory of a municipality, or lying partly within such unincorporated territory and partly within one or more municipalities; or lying within two or more municipalities; or forming the exterior boundary of any muncipality where the same joins unincorporated territory of a county or the territory of another municipality, whether partly within or without such boundary. (*County of Los Angeles* v. *Hunt, supra.*) **[6]** The statute, *supra* (sec. 2), in terms declares that the true intent and meaning of its provisions for acquisition and improvement of property is that "the necessary jurisdiction and power for the consummation thereof shall be vested in, and proceedings therefor may be had and taken by, the legislative body either of the county or of any municipality in which the public interest or convenience is affected thereby, and that each of said legislative bodies shall have concurrent jurisdiction to initiate such proceedings; provided, that the legislative body initiating the proceeding and adopting the resolution of intention therefor as [in the act] provided shall thereafter have exclusive jurisdiction of the proceeding and of all acquisitions and improvements comprehended therein, for the purposes of consummating the same."

Language could not be plainer or more comprehensive in its scope in the matter of providing for a concurrent and a continuing jurisdiction, and for the "consummation" of the acquisition or improvement permitted under the act. If then, the legislature provided for county jurisdiction over a district lying partly within one or more municipalities, and partly within unincorporated territory, is it reasonable to suppose that it intended that a district, having acquired jurisdiction in a proceeding, would pass out of existence because a part only of its territory became merged in a city, the rest of the territory remaining, as before, within another and a separate municipality? To accept such a contention would be, in effect, to hold that the formation of a district embracing any territory within a city could not be accomplished as an initial proceeding. The respondent admits, as he must, that the improvement contemplated in District No. 24 was of more than local con-

cern, and that the county of Los Angeles became the mandatory of the state to initiate and conduct the proceedings. (*Pasadena Park Imp. Co.* v. *Lelande,* 175 Cal. 511 [166 Pac. 341]; *Gadd* v. *McGuire,* 69 Cal. App. 347 [231 Pac. 754].)

We are not now called upon to determine what result would follow if all the territory of a district, created and existing under the Acquisition and Improvement Act, should be absorbed and become a part of a single municipality having superior powers. District No. 24 includes within its boundaries territory in two separate and distinct municipalities.

Let a writ of mandate issue as prayed for.

Seawell, J., Richards, J., Shenk, J., Curtis, J., Langdon, J., and Preston, J., concurred.