42   513
80     8
42   513
109   396

DETERMINED IN THE

# SUPREME COURT,

## JANUARY TERM, 1872.

[No. 3,216.]

## THE CITY AND COUNTY OF SAN FRANCISCO *v.* CERTAIN REAL ESTATE.

JUDGMENT UNOPPOSED NOT NECESSARILY A CONSENT JUDGMENT. — A motion to dismiss an appeal on the ground that the judgment appealed from was entered by consent, cannot be sustained where the record, though it shows that no opposition was made, fails to show that appellant or his attorney was present in Court at its entry.

PRESUMPTION IN FAVOR OF RIGHT OF APPEAL.—Doubtful claims affecting the right of appeal should be liberally construed in favor of the right.

"SECOND STREET CUT" IN SAN FRANCISCO—DEFECTS IN PROCEEDINGS CURED.—The amendatory Act of February 1st, 1870, ratifying and confirming all the orders and resolutions of the Board of Supervisors in reference to the "Second Street Cut" in San Francisco, and the proceedings of the Superintendent of Streets, and the contract, and all the acts and doings of the contractor under it (Stats. 1869–70, p. 41), cured an omission of the Supervisors to publish notice as required by the original Act authorizing the improvement. (Stats. 1867–8, p. 595.)

STREET IMPROVEMENTS—POWER OF LEGISLATURE TO CURE DEFECTS IN PROCEEDINGS.—In reference to proceedings of statutory creation for the

CAL. REPS. XLII—65

improvement of certain streets in San Francisco; *held*, that it was competent for the Legislature, by subsequent enactment, to cure any defects or omissions in the proceedings of the Board of Supervisors or Superintendent of Streets.

Final Disposition of Objections to Commissioners' Report on "Second Street Cut."—The Act of February 1st, 1870, in reference to the "Second Street Cut" in San Francisco (Stats. 1869–70, p. 41), in providing that the judgment of the County Court, either confirming or setting aside the report of the Commissioners, should be "final and conclusive," obviously contemplated that all objections to the report, founded upon the errors, misconduct, irregularities, or omissions of the Commissioners, should be heard and determined by the County Court, and that it should not thereafter be open to attack in a collateral action.

Effect of "Acceptance" of Street in San Francisco.—The only obligation imposed upon the City and County of San Francisco, by section twenty-one of the street law of 1862 (Stats. 1862, p. 391), if there be any, is to keep open and improved that portion of the street constructed and "accepted" in accordance therewith; and there is no obligation on the part of the city and county to pay assessments upon property for benefits derived from the opening and improvement of other portions of the same street.

Appeal from the District Court of the Fourth Judicial District, City and County of San Francisco.

This was an action brought in accordance with section seven of the amendatory Act of February 1st, 1870 (Stats. 1869–70, p. 41), in reference to the collection of assessments for the "Second Street Cut" in San Francisco. It was an action *in rem* to subject certain real estate on the southeasterly side of Market street, one hundred and seventy-five feet southwesterly from Second street, to an assessment of four hundred dollars, imposed upon it by the Commissioners appointed under the original "Second Street Cut" Act of March 30th, 1868 (Stats. 1867–8, p. 595.) An answer was filed on behalf of the real estate involved, setting up the various defenses and the cross-complaint noticed in the opinion. After the filing of the answer the plaintiff moved for judgment on the pleadings, basing his motion upon the ground that there was no plea of payment, and that under the statute, which limits the defenses to be made in opposi-

tion to such a suit, no allowable issue had been tendered. The motion was granted, and, as appears from the minutes of the Court below, "no opposition being made thereto, it is ordered that plaintiff have and take judgment thereon for the relief demanded in the complaint.

Judgment being accordingly entered, defendant appealed.

*Daingerfield & Olney*, for Appellant.

The statute under which plaintiff attempts to force a lien is in conflict with Article I, section eleven, of the Constitution. There was, at the time of its passage, a general law in force providing for the change of grade of streets, and the Legislature had no power to suspend its operation for a particular locality of the city. (*French* v. *Teschemaker*, 24 Cal. 544; Cooley on Con. Lim. 391, 392, and notes; *Lewis* v. *Webb*, 3 Greenl. 326; *Wally's Heirs* v. *Kennedy*, 2 Yerg. 554; *Janes* v. *Reynolds*, 2 Texas, 251.)

That part of the statute which limits the proof by the defendant, on the trial, to payment, is unconstitutional. (Art. I, Sec. 8, and Art. III, Sec. 1, of Con.; Blackwell on Tax Titles, 80; Cooley on Con. Lim. 368; *Abbott* v. *Lindenbower*, 42 Mo. 162; *Corbin* v. *Hill*, 21 Iowa, 70; *Watlan* v. *White*, 19 Ind. 470; *People* v. *Hastings*, 29 Cal. 449.)

The action is not brought upon a judgment of the County Court, but upon an assessment which, by the statute, is merely made evidence of the liability of the land, not conclusive evidence, nor even prima facie evidence. There was, in fact, no judgment of the County Court, in the sense in which the word judgment is used in Courts of law or equity. The proceedings there were not judicial proceedings. There was nothing there in the nature of an action involving the validity of the assessment. It merely supervised the action of the Commissioners, and heard objections to their report. The so-called judgment of the County Court is not a binding judgment upon a Court of

law where the validity of all the proceedings, prior to and including the assessments, are in dispute. (*S. F. and A. W. Co.* v. *A. W. Co.* 35 Cal. 644.) Here the objectors to the assessments were condemned before they were heard. Afterwards, they were allowed the poor privilege of coming into the County Court and showing that the sentence was too severe. But now, when they ask to be heard in full vindication of their rights, they are met by the plea that the judgment of the County Court, to the effect that the sentence was not too severe, precludes them from opening their mouths in their own defense. This is not justice, and we think it is not law.

There is nothing in the statute to prevent us from setting up a cause of action by way of cross-complaint. The statute, being in derogation of the common law, must be strictly construed; and, as it does not forbid a cross-action, such an action will be allowed. Courts look with disfavor upon anything, statute or other, which precludes a party from asserting his rights. The cross-complaint sets up, in effect, a contract between the plaintiff and the property holders, by the terms of which, and the "acceptance" of Second street, the plaintiff became obligated thereafter to keep it in repair.

*Joseph M. Nougues,* for Respondent.

The statute regulating the mode of proceeding, and under which the plaintiff claims, is constitutional and valid. (*People* v. *Seymour,* 16 Cal. 332; *Ogden* v. *Saunders,* 12 Wheat. 262; *Oriental Bank* v. *Freese,* 18 Maine, 109; *Fales* v. *Woodworth,* 23 Maine, 553; *Rich* v. *Flanders,* 39 N. H. 304.)

The facts stated in the cross-complaint do not show that defendant had any vested right of action against plaintiff for the amount of the assessment. The City and County of San Francisco, though designated by the statute as the

plaintiff, has no pecuniary interest, and by the terms of the statute is expressly exempted from liability. Besides, the facts set forth by way of cross-complaint show that the acceptance of the street—if it ever was accepted—was subsequent to the passage of the statute under consideration, and prior to the judgment of the County Court, and that the "assessment" here was not for work done in front of the property of defendant, but for work done in front of other property; and it appears that the defendant was benefited, and is within the district, and liable to assessment.

The judgment of the County Court was final and conclusive upon all matters which were or might have been presented by defendant against the confirmation of the report of the Commissioners. (See. *Houghton's Appeal, ante,* 42; *Biddle* v. *Wilkins,* 1 Pet. 686; *Loring* v. *Mansfield,* 17 Mass. 394; *Le Guen* v. *Gouverneur,* 1 John. Cases, 492; *Mecham* v. *McKay,* 37 Cal. 164; *Collins* v. *Butler,* 14 Cal. 228; *Barnum* v. *Reynolds,* 38 Cal. 646; *Sullivan* v. *Triumfo M. Co.,* 39 Cal. 465.)

*John W. Dwinelle, McAllisters & Bergin, McCullough & Boyd,* and *Patterson, Irvine & Stow,* under the designation of "*amici curiæ,*" also filed a "Brief for Respondent"—the real object of which, however, appears to have been to dismiss the appeal in this case, and thereby prevent a decision in advance of cases in which they were interested, and "upon a presentation which would not be satisfactory to them." They urged chiefly the point that the judgment was taken without opposition on mere reading of the motion and proof of service; that there was no point of law or fact argued or presented to the Court below; that there was no appearance of any real contest between the parties, and that the judgment was in effect taken by consent, and was, therefore, not appealable.

By the Court, Crockett, J.:

It is objected, *in limine,* that we ought not to entertain this appeal, for the reason that the judgment from which the appeal was taken was entered *pro forma* and by consent. If the record disclosed this fact, it would be our duty to dismiss the appeal, as we have repeatedly decided that we will not review judgments or orders entered by consent. (*Stoddard* v. *Treadwell,* 29 Cal. 282; *Sleeper* v. *Kelly,* 22 Cal. 456; *Coryell* v. *Cain,* 16 Cal. 572; *Brotherton* v. *Hart,* 11 Cal. 405; *Imley* v. *Beard,* 6 Cal. 666.) The order in this case, directing a judgment to be entered for the plaintiff, after reciting that the plaintiff, upon due notice, moved for judgment, continues: " And no opposition being made thereto," and then proceeds to direct a judgment to be entered for the plaintiff on the pleadings. If it had appeared from the record that the defendant's attorney was present in Court when the motion was made and the order entered, it is certainly true that without straining the language employed in the order, it might well be held to mean that the defendant consented to the judgment. In that case the recital that he made no opposition to it might possibly, under certain circumstances, be held as equivalent to the statement that he consented to it. It is unnecessary, however, to express a positive opinion on this point, as the record does not show that the defendant's attorney was present in Court, and if he did not appear to the motion there can be no inference that he consented to the judgment. If, however, he had been present, it may be that he was only passive and silent, and in that sense made no opposition to the judgment, choosing to stand on his legal rights, and leaving the Court to decide the question as it saw fit, without any suggestion from him. Doubtful clauses affecting the right of appeal should be liberally construed in favor of the right. I am, therefore, of opinion that we ought to entertain this appeal.

One of the defenses set up in the answer is, that the Board of Supervisors omitted to publish a certain notice as required by the provisions of the Act of March 30th, 1868 (Stats. 1867–8, p. 595), and that the publication of this notice was a jurisdictional fact, without which the Board acquired no authority to let the contract and proceed with the work. But a conclusive answer to this defense is, that by section eleven of the amendatory Act of February 1st, 1870 (Stats. 1869–70, p. 41), it is provided that all the orders and resolutions of the Board of Supervisors, and the proceedings of the Superintendent of Streets, be, and they were thereby ratified and confirmed, and the contract and all the acts and doings of the contractor under it, were affirmed and declared to be valid.. The whole proceeding was of statutory creation, and "it was competent for the Legislature to cure any defects or omissions in the proceedings of the Board, or of the Superintendent of Streets." This was done, and it is too late now to inquire whether the Board strictly pursued its original authority in its mode of initiating the work.

The other defenses set up in the answer seek to attack the proceedings of the Commissioners appointed to assess the damages and benefits, and to assail their report on the ground that the Commissioners did not afford to all the parties interested in the property to be affected by the improvement, an opportunity to be examined, and to call witnesses in support of their rights. The amendatory Act of February first provides that the report shall be returned into the County Court, of which fact notice was to be given by publication, after which a reasonable time is allowed by the Act within which all persons interested were permitted to file objections to the report and to call witnesses in support thereof. A sufficient opportunity, after due notice, was thus afforded to all persons to attack the report and the proceedings of the Commissioners for irregularity, or for any other

just cause; and after hearing all the proofs and allegations of the parties, it was made the duty of the Court to set aside, modify, or confirm the report. In case the report was set aside and a new report was ordered to be made, a like opportunity was afforded for filing objections thereto and calling witnesses in support of them. After hearing the objections to the second report, it was made the duty of the Court to render a judgment, either confirming or setting aside the report; and the statute declares that this judgment "shall be final and conclusive." In the case of Houghton's appeal from this judgment, decided at the last term, we held the judgment to be final and conclusive in such a sense that no appeal would lie therefrom. It was obviously the intention of the Legislature that all objections to the report, founded upon the errors, misconduct, irregularities, or omissions of the Commissioners, should be heard and determined by the County Court, and should not thereafter be open to attack in a collateral action. The parties in interest were allowed their day in Court, after due notice, with a sufficient opportunity to be heard in their defense, and the proceeding would be interminable, if the report could be collaterally attacked after a final judgment in the County Court. This is precisely what is attempted to be done by the defense in this action. To permit such a defense would be to disregard the manifest intention of the statute, and to nullify some of its provisions. The answer, in my opinion, presented no defense to the action.

But the defendant also filed a cross-complaint, setting up that Second street, from Market to Folsom, had been constructed under and in pursuance of the provisions of section twenty-one of the Act of April 25th, 1862, amending the Consolidation Act (Stats. 1862, p. 401), and that having been so constructed at the expense of the adjoining property, it was incumbent on the city and county to defray the cost of all subsequent improvement of the street; that, by virtue of

said section twenty-one, the owners of the property, after the street was constructed at their expense, stood in the relation of contracting parties toward the city and county, and acquired a vested right of action against the latter to compel the payment of whatever costs or expenses might thereafter be incurred for improving the street or keeping it in repair. Waving the question whether the defendant was entitled to file a cross-complaint in this action, or should be limited to the defense specified in the amendatory Act of February 1st, 1870, I think the cross-complaint contains no cause of action against the plaintiff. The defendant in this action is a lot of land situated on the southerly side of Market street, west of Second street, and the averment of the cross-complaint is, that Second street, from Market to Folsom, was constructed under and in accordance with section twenty-one of the Act of April 25th, 1862, to the satisfaction of the committee of the Board of Supervisors and of the Superintendent of Streets, and that the Board of Supervisors has accepted that portion of the street lying between Folsom and Howard streets, and that the defendant in this action was assessed for and contributed toward the expense of constructing Second street from Market to Folsom.

On these facts it is claimed that the city and county, and not the defendants, are liable for the expense of reducing the grade of Second street, between Folsom and Harrison or Bryant streets. If section twenty-one, already referred to, can be construed as creating a contract between the city and county on the one side and the property owners on the other, that when a street has been constructed in accordance with section twenty-one, at the expense of the property, the city and county would thereafter keep it open and improve it at its own expense (a point not necessary to be now decided), it is nevertheless clear that the only obligation imposed

CAL. REPS. XLII—66

on the city and county by section twenty-one is to keep open and improve that portion of the street which had been so constructed, and that there is no obligation upon the city and county to pay assessments upon the property for benefits derived from opening or improving other portions of the same street. There can be no reasonable interpretation of section twenty-one which would render it incumbent on the city and county to do more than keep open and improve that portion of a street which had been constructed in accordance with that section. The work for which this property has been assessed was done upon a portion of Second street not lying between Market and Folsom, but entirely outside those limits. I imagine it never entered the mind of the Legislature, when it passed section twenty-one, that it was fastening upon the city and county a liability for all assessments for benefits accruing to a block of land situated on a street constructed under that section, from work done or an improvement made on a remote portion of the same street.

The assessment in this case is not for keeping open or improving Second street, from Market to Folsom, in the sense of section twenty-one, but for benefits which the property is supposed to have derived from work done on Second street at a different point; and it is manifest that the city and county never undertook to pay or assume this liability, either expressly or by implication. The cross-complaint, therefore, contains no valid cause of action, and judgment was properly rendered for the plaintiff on the pleadings.

Judgment affirmed.

Neither Mr. Chief Justice WALLACE, nor Mr. Justice SPRAGUE, participated in the foregoing decision.