[Sac. No. 6489. In Bank. Jan. 24, 1957.]

MADERA IRRIGATION DISTRICT, Plaintiff and Appellant, v. ALL PERSONS, etc., Defendants; JOHN HUMPHREYS et al., Respondents; THE PEOPLE et al., Defendants and Appellants.

683

David E. Peckinpah, Denver C. Peckinpah, Harold M. Child and L. N. Barber for Plaintiff and Appellant.

Edmund G. Brown, Attorney General, B. Abbott Goldberg and Adolphus Moscovitz, Deputy Attorneys General, Henry Holsinger, Principal Attorney, Division of Water Resources, and Gavin M. Craig, Senior Attorney, for Defendants and Appellants.

Roy A. Gustafson, District Attorney (Ventura), James E. Dixon, Deputy District Attorney, J. Lee Rankin, Solicitor General of the United States, Perry W. Morton, Assistant Attorney General, David R. Warner and Roger P. Marquis, Attorneys, Department of Justice, as Amici Curiae on behalf of Appellants.

Harry W. Horton, Horton & Knox, Denslow Green, Green, Green & Plumley, Chester R. Andrews, Mason A. Bailey, Coffee & Wolfe, Dowell & Thompson, Sherwood Green and Green, Green &·Bartow for Respondents.

Brobeck, Phleger & Harrison, Herman Phleger, Alvin J. Rockwell and John M. Naff, Jr., as Amici Curiae on behalf of Respondents.

SHENK, J.—This is an appeal by the plaintiff Madera Irrigation District and certain of the defendants from a judgment refusing to confirm a proposed contract between the United States, acting by and through the Bureau of Reclamation of the Department of the Interior, and the plaintiff district. The contract is substantially the same as that considered in the companion case of *Ivanhoe Irr. Dist.* v. *All Parties, ante,* p. 597 [306 P.2d 824], this day decided. Except as to certain matters hereinafter referred to the issues are also the same as in that case.

As in the Ivanhoe contract the United States undertook to deliver water for irrigation purposes from the Central Valley Project to the district and to expend funds for the construction of a distribution system within the district. This proceeding, also an *in rem* special proceeding to obtain the confirmation of the proposed contract, was brought by the district pursuant to the provisions of sections 22670 et seq. and section 23225 of the Water Code. The federal law (Omnibus Adjustment Act of 1926, § 46, 44 Stats. 649, 650, 43 U.S.C. § 423e, Federal Reclamation Laws Ann. 318-319) and article 36 of the contract require the validity or invalidity thereof to be determined by a court of competent jurisdiction. The contract in question was entered into on May 14, 1951, by the district acting under the Irrigation District Federal Cooperation Law. (Wat. Code, §§ 23175 et seq.) On the 26th of March, 1951, the California Districts Securities Commission, with reservations, approved the contract (Wat. Code, §§ 23222, 24253), and the electors of the district subsequently approved it by a vote of 1979 to 755 (Wat. Code, §§ 23220, 23221, 21925-21935). The district commenced this proceeding on the 21st day of May, 1951. Eighty-six landowners within the district, and four landowners outside of the district filed answers in which they opposed the confirmation of the contract. The State of California and the Water Project Authority of the State of California, by and through the attorney general, filed a joint

answer. The state prayed that the contract be validated and a separate prayer recited that the Water Project Authority "is not taking any position upon the validity of the contract" and requested the court to declare that its decree "does not purport to be an adjudication of the right or interest of the State of California or its agencies . . . or of the right or interest of the United States or its agencies . . . in or to the water or water rights . . . involved in the Central Valley Project."

After the statutory time for filing an answer had expired, leave of the court was granted the State Engineer of the State of California, acting in his capacity as such and ex-officio as Chief of the Division of Water Resources, Department of Public Works, to file a separate answer by counsel for the Division of Water Resources. The State Engineer took no position as to the validity of the contract, stating that his object was to protect the state law relating to water use and control. Regional counsel for the Bureau of Reclamation of the Department of the Interior were granted leave by the court to appear as amici curiae and as such participated throughout the proceedings in the trial court in support of the confirmation of the contract.

Judgment was ordered in favor of the objecting defendants and the court specifically directed that findings of fact and conclusions of law be prepared in accordance with the views of the same court in the Ivanhoe case. However, additional findings and conclusions hereinafter referred to were made on issues not involved in the Ivanhoe case. The judgment included injunctive provisions similar to those in the Ivanhoe case except that it expressly provided that "The delivery of water by the United States to the plaintiff District at charges not to exceed $3.50 per acre foot for Class 1 water and $1.50 per acre foot for Class 2 water, and the collection of funds therefor, and the payment for the costs thereof by plaintiff district to the United States is not enjoined."

The appellants are the State of California represented by the attorney general who seeks a reversal of the judgment, the plaintiff district which seeks a reversal, and the State Engineer as Chief of the Division of Water Resources of the Department of Public Works who asserts the invalidity of the contract but contends that the trial court erred in a determination that a right to the use of water is acquired by duly filing an application to appropriate water without perfecting it. The respondents, who seek an affirmance of the

judgment, are supported by the Di Giorgio Fruit Corporation as amicus curiae. The Ventura County Flood Control District has appeared as amicus curiae in support of the appellants and seeks to establish that the trial court's determination that water rights involved have become appurtenant to the lands upon which water is being or is to be used is not in accordance with existing law.

The Madera Irrigation District is located in Madera County. It now has an area of approximately 112,000 acres, of which about 85,000 acres have been developed for irrigation. Before project water became available 90 per cent of the acreage irrigated was supplied with water pumped from an underground water supply. During the 25-year period from 1922 through 1946 the demand on that supply exceeded the natural supply by an average of 27,200 acre feet annually and resulted in a net lowering of the water table by 21.7 feet. The need of a supplemental supply of water was thus apparent. Shortly after its organization the district in 1920 developed preliminary plans for the construction of a storage dam on the San Joaquin River near Friant and a canal to deliver water stored therein to lands within the district. It acquired a suitable dam site and gravel needed in the construction. It filed applications with the Division of Water Resources to appropriate unappropriated water of the San Joaquin River. Plans for construction of the dam were never completed by the district apparently because litigation between Miller and Lux and the Madera Irrigation District established that there was insufficient unappropriated water in the San Joaquin River to sustain the proposed project.

In May, 1939, the district entered into a contract with the United States whereby it transferred its dam site, gravel lands and applications to the United States for use in connection with the Central Valley Project. In exchange the district received $300,000 and a permanent priority right to contract for an annual supply of water from the project. Part A of the contract now under consideration is in partial recognition of that right.

The contract in Part A provides for a designated water supply for the district from the Friant Dam and the Madera Canal for a period of 40 years, commencing with the year in which the initial delivery date occurs. The United States agrees to furnish to the district, and the district agrees to accept and pay for the water supplied at rates whose maximum limits are fixed by the contract. Part B of the contract

provides that, to the extent that funds may be available by appropriation, the United States will construct a distribution system to cost not exceeding $8,320,000. The system will be constructed so as to provide facilities for the delivery of water from the Madera Canal to each unit of irrigable land within the district, each unit in no event to comprise more than 160 acres of land. The district agrees to convey to the United States without cost the unencumbered fee simple title to any land owned by the district, or perpetual easements therein, required for right of way purposes for the distribution system. Title to all the project works, including the distribution system, is to be and remain in the name of the United States until otherwise provided for by the Congress, notwithstanding the transfer of any such works to the district for operation and maintenance. The district must repay to the United States the actual cost of the distribution system. The obligation is to be paid in 40 successive, equal annual installments, the first of which shall become due in the year following a two-year development period after the year in which the system shall become available for use. At the commencement of the development period the district will take over and at its own expense operate and maintain the distribution system, subject to the right of the United States to take possession of the system upon the failure of the district to perform its contractual obligations.

The above provisions of the contract with reference to cost, work, land limitation and payment by the district are substantially the same as those in the Ivanhoe contract. There are, however, two additional provisions in the contract here involved which recognize and modify the terms of the 1939 contract, by which the district conveyed the Friant Dam site and other interests to the United States. Article 2 of the present contract modifies and adjusts the amount of water to which the district might have asesrted a priority right under the 1939 contract, and article 4 states that the present contract is in satisfaction of this right only for its 40-year term, after which it may be extended, as distinguished from the Ivanhoe contract wherein the United States did not undertake to supply water beyond the 40-year term of the contract.

For reasons stated in the Ivanhoe case the contract in the present case is ineffective in that it purports to deprive the landowners of the plaintiff district of vested rights as members of the class who are the beneficiaries of the trust

under which the United States acquired appropriative rights to the domestic waters of this state; in that it seeks to deprive so-called "large landowners" of rights to waters for their lands in excess of 160 acres although such landowners are qualified members of the class who are the beneficiaries under the declared trust, and who are denied thereby due process and equal protection of the laws; in that it, by implication or otherwise, purports to grant to the United States the right to distribute water for irrigation at a price without compliance with the laws of this state relating to the distribution of its domestic water; in that it, or to the extent that it, by implication or otherwise, reserves to the United States the right to determine at its own discretion whether to continue the distribution of water to the plaintiff district and landowners therein after the termination of the present contract, and in that it by implication or otherwise fails or refuses to recognize the debtor-creditor relationship of the parties for repayment of costs of construction of the storage and distribution system.

In addition to the foregoing there are other issues which are not included within the determinations in the Ivanhoe case. The first of these relates to the nature of rights which accrue by the filing of an application to appropriate water, and particularly whether the district and its landowners have additional rights arising from the district's applications for the appropriation of water on the San Joaquin River at the time it contemplated construction of a dam at Friant. The applications, filed in the 1920's, were never perfected; no works pursuant thereto were ever built, no water was ever diverted, and no permit or license was ever obtained.

As a part of its judgment the trial court in several instances held that an application for the appropriation of unappropriated water from a particular source resulted in a vested right in the applicants to a permanent supply of water from that source. In the Ivanhoe case it was concluded that the rights acquired under an application by the state or its assignee or by the United States to appropriate the domestic waters of the state for a beneficial use did not confer a vested right in the persons for whose benefit the application was made in the sense that such right became a part and parcel of the freehold estate. It is contended by the State Engineer in the present case that the right created by the application itself is an incomplete, incipient and con-

ditional right in and to the water applied for. With this contention we agree.

Prior to legislation upon the subject, no priority of right to the use of water could be acquired in advance of the taking of the first definite step to divert water to beneficial use. When work was finally completed and the water applied to beneficial use, a right vested in and to the use of the water which "related back" for priority to the time when the claim was made, the location was selected, and work was commenced looking toward the conveyance of a definite amount of water from a definite source to the place of its intended use. (*Nevada etc. Co.* v. *Kidd*, 37 Cal. 282; *Osgood* v. *El Dorado Water & Mining Co.*, 56 Cal. 571.) From the time of the commencement of the work to the time of beneficial use the right was considered as incipient and conditional. The provisions of the Civil Code enacted in 1872 were substantially declaratory of the rules laid down in the early decisions. (Civ. Code, §§ 1414-1421.) ■ In *Inyo Consol. Water Co.* v. *Jess*, 161 Cal. 516, the court declared at page 520 [119 P. 934] that the purpose of the code sections was "to afford a more perfect protection for such rights and to facilitate the subsequent acquisition of the title to the use. Previously, the incomplete right could be acquired only by some open, visible work to that end, upon the ground, accompanied by a declaration of the intent. Disputes would naturally arise as to priority between different diversions from the same stream at places far apart. The code endeavors to avoid this by providing for the posting of a notice at the proposed dam, and declaring that such notice secures a prior right, without any work, for the period of 60 days thereafter. (*Wells* v. *Mantes*, 99 Cal. 586 [34 P. 324].) Thus there is given that which it is said did not exist before (*Kelly* v. *Natoma Water Co.*, 6 Cal. 105), a constructive right to the use of water, a right existing only by publicly declared intent, and which may be made a perfect and complete title, as against all except prior users and riparian owners, by beginning the work within sixty days, diligently prosecuting it to completion, and thereupon actually using the water. This incomplete right, although not as yet a title, is an interest in the realty." (See also *Merritt* v. *City of Los Angeles*, 162 Cal. 47 [120 P. 1064].)

■ The Water Commission Act of 1913 and the existing provisions of the Water Code changed the mechanics of the procedure for initiating and completing an appropriation of water, but they do not change the attributes of the water rights

acquired thereunder. The filing of an application under the present law is comparable and of like effect to the posting and recording of notice or commencement of actual construction work under the rules which had previously prevailed. In *Yuba River Power Co. v. Nevada Irr. Dist.*, 207 Cal. 521 [279 P. 128], the court had before it the character of the water rights acquired under the Water Commission Act. In speaking of *Inyo Consol. Water Co. v. Jess*, and *Merritt v. City of Los Angeles*, it is stated in the Yuba River Power Company case that, ''We cannot distinguish these cases from the situation before us. The right being protected and administered is the same. A period of priority was provided, and the protection given there was during such statutory period and prior to any actual construction of diversion works.'' Under the facts appearing in the Yuba River Power Company case the plaintiff was entitled to the issuance of a permit, although his rights were as yet unperfected. It was held that he had a right protected from impairment by other claimants, although his right was as yet incomplete and conditional. There is nothing in the Yuba City Power Company case to indicate that it stands for the proposition that the Water Commission Act conferred upon an applicant thereunder a greater right than had previously been conferred upon one who filed notice under the former rules. The Water Code provides that the effect of filing an application confers, for all practical purposes, a priority only. Section 1450 states: ''Any application properly made gives to the applicant a priority of right as of the date of the application until such application is approved or rejected. Such priority continues only so long as the provisions of law and the rules and regulations of the department are followed by the applicant.''

The issuance of a permit following application still does not confer upon the permittee a fully perfected right. Section 1455 of the Water Code states: ''The issuance of a permit continues in effect the priority of right as of the date of the application and gives the right to take and use the amount of water specified in the permit until the issuance or the refusal of issuance of a license for the use of water.'' The final procedural step in perfecting a water right is the issuance of a license as prescribed in sections 1600 through 1677 of the Water Code. But the real basis, measure and limit of the appropriative right is the actual beneficial use of the water. This is inherent in the Constitutional Amendment

of 1928 and in section 1240 of the Water Code, which provides: "The appropriation must be for some useful or beneficial purpose, and when the appropriator or his successor in interest ceases to use it for such a purpose the right ceases."

■ It appears from the foregoing that neither the Madera Irrigation District nor any other applicant acquired a vested right to a permanent supply of water appurtenant to the lands of the district by the mere filing of applications for the appropriation of water on the San Joaquin River. Such right as was acquired was inchoate and incomplete and subject to defeasance upon the failure to perfect it in accordance with the law.

As noted, certain defendants appeared who were not landowners in the plaintiff district. These defendants were landowners within the district at the time the district contracted with the United States for the conveyance of the Friant Dam site and other interests. It appears that subsequently on their own petition the lands of these defendants, comprising some 19,500 acres, were excluded from the district; that these landowners intended to form an independent irrigation district and sought to obtain from the plaintiff district a proportionate share of the benefits under the 1939 contract, particularly a share of the priority right to contract for project water. Under the present contract the amount of priority water to which the Madera Irrigation District was entitled under the 1939 contract was reduced in proportion to the reduction of acreage in the district since the 1939 contract. But the excluded landowners assert that the United States has refused to confer upon them that reduced portion of the priority right under the 1939 contract, and that to refuse to do so constitutes a deprivation of property without due process of law. Their claim was asserted as an additional ground for the invalidity of the present contract, and the trial court so held.

Whatever may be the rights of the excluded landowners under the 1939 contract, it does not appear that they have individual rights which may be asserted under the contract sought to be validated or to any of the property or rights held by the district. ■ Since 1879 the Constitution has provided in section 1, article XIV, that the use of all waters "appropriated . . . for sale, rental or distribution is hereby declared to be a public use. . . ." No statement is there made as to the appurtenance of such waters to the lands involved. Under that section of the Constitution the use of

waters involved in the present case is a public use. The nature of the water right to which a landowner entitled to service from an entity which has appropriated waters devoted to a public use, has been the subject of prior litigation in this state. In *Leavitt* v. *Lassen Irr. Co.* (1909), 157 Cal. 82 [106 P. 404, 29 L.R.A.N.S. 313], a landowner sought to reserve to his private ownership a portion of waters he had appropriated for a public use. In holding that he could not establish an outright private ownership of waters appropriated for a public use, the court relied on the constitutional provision above set forth. It was stated at pages 89 and 90: "In *McCrary* v. *Beaudry,* 67 Cal. 120 [7 P. 264], is contained the first statement of this court in construction of the constitutional provision: 'Whenever water is appropriated for distribution and sale, the public has a right to use it, that is, each member of the community, by paying the rate fixed for supplying it, has a right to use a reasonable quantity of it, in a reasonable manner.' And in the late case of *Hildreth* v. *Montecito Creek Water Co.,* 139 Cal. 22 [72 P. 395], it was said by Mr. Justice Shaw, speaking for the court in Bank, in defining the public use declared by the constitution: 'In the case of a public use, the beneficiaries do not possess rights to the waters which are, in the ordinary sense, private property. A public use 'must be for the general public, or some portion of it, and not a use by or for particular individuals, or for the benefit of certain estates.' (*McQuillen* v. *Hatton,* 42 Ohio St. 202.) . . . The right of an individual to a public use of water is in the nature of a public right possessed by reason of his *status* as a person of the class for whose benefit the water is appropriated or dedicated. All who enter the class may demand the use of the water, regardless of whether they have previously enjoyed it or not.' "

In *Miller* v. *Railroad Com.,* 9 Cal.2d 190 [70 P.2d 164, 112 A.L.R. 221], in passing on the nature of the right held by one entitled to participate in the distribution of irrigation water devoted to a public use, the court stated at page 199: "This right is simply a right of service, a right to be furnished with water by the utility upon payment of the price, and not a water right in the ordinary sense of 'a private freehold interest in the freehold of the distributing company.' (*Glenn-Colusa Irr. Dist.* v. *Paulson, supra,* 75 Cal.App. 57 [242 P. 494].)"

From the foregoing it is established that a landowner within an irrigation district does not possess as a

part of his freehold estate a proportionate ownership in assets of the district. The concept of ownership existing in the relationship between a district and a landowner therein was further considered in *Jenison* v. *Redfield,* 149 Cal. 500 [87 P. 62], wherein a landowner sought damages from the district for refusing to deliver to him his pro rata share of the district's water supply, which he proposed to use on land owned by him outside the district. The court in denying relief used the following language: "It is apparent that to sustain the claim of plaintiff, it must be held that the effect of our statutes relative to irrigation districts, is to make each owner of land within a district the absolute owner of a proportionate share of the water of the district to which his land entitles him, to do with as he sees fit. . . . It seems very clear that such a conclusion would be opposed to the whole plan or scheme of the legislation for irrigation districts, converting a district . . . into a mere agency for the distribution of its water to individuals for use by them outside the district for any purpose whatever. . . . Such a construction of the provisions of the Irrigation Act entirely ignores the object of its enactment." ■ Although the above case dealt with lands which never had been within a district, and the present case with lands which were once within the plaintiff district and later excluded, there is nothing in the law which would justify the conclusion that the owners of properly excluded lands were possessed of rights which attached to their lands.

Nothing said herein is inconsistent with the cases which hold that the members of an irrigation district are the beneficial owners of the water rights of the district. (*Merchants Nat. Bank* v. *Escondido Irr. Dist.,* 144 Cal. 329 [77 P. 937], and cases there cited.) ■ The trust under which water rights and other property of an irrigation district is held by the district is for the benefit of a particular class of individuals. Those individuals are the equitable owners. Individual members within that class can demand services to which they are entitled if they qualify and as long as they qualify as members of that class.

Questions are raised as to the sufficiency of the notice of election whereby the electors of the district were called upon to approve or disapprove the proposed contract. The trial court concluded that the contract was invalid for lack of proper notice. (Wat. Code, § 23223.) These questions need not be determined on this appeal for the reason that upon

the submission of any further proposed contract to the voters in the district, the alleged defects need not recur.

In accordance with the views expressed herein and in *Ivanhoe Irr. Dist.* v. *All Parties, ante,* p. 597 [306 P.2d 824], the judgment is modified by striking therefrom (a) that portion which holds that by the mere application for the appropriation of water for a public use within the district or by actual use by landowners in the district of water being furnished by the United States pending negotiations for a contract, the landowners of the district acquired a vested right appurtenant to their lands entitling them to perpetual service as a part of the freehold; (b) that portion which holds that an individual landowner, a member of the class entitled to the benefits of an irrigation district, acquires any permanent right to such benefits appurtenant to his lands when he ceases to be a member of that class; (c) those portions of the judgment which hold that the following provisions of the contract designed to secure repayment of construction costs to the United States are invalid: (1) that part withholding water from lands in default of proper charges although the district may not be in default as to the United States, (2) that part reserving to the United States the right to repossess waste, seepage and return flow which escapes or is discharged beyond the district boundaries, (3) that part limiting changes in boundaries, consolidations, mergers and dissolutions during the term of the contract and (4) that part subjecting all lands within the district to ad valorem taxes to defray charges imposed by the district.

As so modified the judgment is affirmed, the respondents to recover costs on appeal.

Schauer, J., Spence, J., and McComb, J., concurred.

GIBSON, C. J., Dissenting.—For the reasons stated in my dissenting opinion in *Ivanhoe Irr. Dist.* v. *All Parties, ante,* p. 597 [306 P.2d 824], I would reverse the judgment.

Traynor, J., concurred.

CARTER, J., Dissenting.—This is a companion case to *Ivanhoe Irr. Dist.* v. *All Parties, ante,* p. 597 [306 P.2d 824], and for the reasons stated in my dissenting opinion in that case, I would reverse the judgment.

Appellants' petition for a rehearing was denied February 19, 1957. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.