[L. A. No. 22761. In Bank. Jan. 24, 1957.]

THE SANTA BARBARA COUNTY WATER AGENCY, Respondent, v. ALL PERSONS AND PARTIES etc., Defendants; MAURICE A. BALAAM et al., Appellants.

Sherman Anderson and W. P. Butcher for Appellants.

Brobeck, Phleger & Harrison, Herman Phleger, Alvin J. Rockwell and John M. Naff, Jr., as Amici Curiae on behalf of Appellants.

Vern B. Thomas, District Attorney (Santa Barbara), and Lawrence M. Parma, Deputy District Attorney, for Respondent.

Edmund G. Brown, Attorney General, B. Abbott Goldberg and Adolphus Moskovitz, Deputy Attorneys General, J. Lee Rankin, Solicitor General of the United States, Perry W. Morton, Assistant Attorney General, David R. Warner and Roger P. Marquis, Attorneys, Department of Justice, and Price, Postel & Parma as Amici Curiae on behalf of Respondent.

SHENK, J.—This is an appeal from a judgment for the plaintiff Santa Barbara County Water Agency confirming the validity of a so-called "Master Contract" between the agency and the United States, acting by and through the Bureau of Reclamation of the Department of the Interior, and five so-called "Member Unit Contracts" between the plaintiff and each of five public bodies, namely, the city of Santa Barbara, and the Carpinteria, Summerland, Montecito and Goleta County Water Districts.

The plaintiff as petitioner commenced this proceeding on February 8, 1950, pursuant to section 11.10 of Santa Barbara County Water Agency Act (Act 7303, Stats. 1945, p. 2780; amended by Stats. 1949, p. 18) to secure a judicial determination of the legality of the establishment of the agency and its member units, and the validity of the master contract and the five-member unit contracts entered into by the agency. Such a determination is required by article 35 of the master contract, by articles 36 of each of the member unit contracts, and by federal law (Omnibus Adjustment Act of 1926, § 46, 44 Stats, 649, 650, 43 U.S.C. § 423e). ■ It is a special proceeding *in rem* and summons was by publication. It was brought against all persons having or claiming to have any interest in the formation of the agency, in the proceedings of the various contracting entities leading to the execution of the contracts, in the operation of the proposed contracts and in the property affected thereby. A final judgment will foreclose further inquiry into the matters to which the judgment properly relates, and within its legitimate issues it will be binding on the world at large. (*Ivanhoe Irr. Dist.* v. *All Parties, ante,* p. 597 [306 P.2d 824], and cases there cited.) The answering defendants are Maurice A. Balaam, Ted R. Holden, William G. Sudden, W. G. Moore, R. E. Sudden, Charles E. Sudden and L. H. Crandall. The default of all other defendants was duly entered on May 1, 1950.

The petition alleged six causes of action each seeking the confirmation of one of the contracts involved. The defendants demurred to each count on both general and special grounds. The demurrers were overruled. The defendants' answer denied the validity of the formation of the plaintiff agency, certain proceedings of the board of directors of the agency leading to and including the signing of the master contract, the master contract itself, the proceedings of the respective boards of directors of the different member units leading to and including the signing of the respective member

unit contracts and the validity of each of the member unit contracts.

The defendants also pleaded nine affirmative defenses to each of the causes of action. In substance it is alleged: (1) that provisions in the member unit contracts authorized by the Santa Barbara County Water Agency Act, whereby the agency will levy ad valorem taxes on all property in the agency to establish a fund from which contributions will be made to the member units, violate the constitutional provisions against legislative gifts and authorization of the imposition of local taxes by special legislation (art. IV, § 13 and art. XI, § 12 of the state Constitution); (2) that the Santa Barbara Water Agency Act purports to give the agency the power to levy ad valorem taxes on all property in the city of Santa Barbara and the various county water districts in violation of the constitutional prohibition of the imposition of taxes on individuals or property within public corporations for municipal purposes (art. XI, § 12 of the state Constitution); (3) that the Santa Barbara Water Agency Act is unconstitutional in that it subjects the defendants to taxation and assessment on lands which cannot possibly be benefited from the construction of the project; (4) that any determination, legislative or otherwise, that the defendants' lands will be benefited by the project is arbitrary and contrary to any rational view based on evidence of investigation; (5) that the contracts provide for no distribution of water to parcels owned by a single person in excess of 160 acres, but that the excess lands are nevertheless subject to taxation for project purposes; (6) that the contracts are impossible of performance and lacking in consideration; (7) that the contracts (except the city of Santa Barbara Member Unit Contract) purport to prohibit the exclusion from the district of lands not benefited by the project, without the consent of the Secretary of the Interior; that section 23202 of the Water Code condones such provisions, and that both the contracts and section 23202 violate the Fourteenth Amendment of the federal Constitution and constitute an unlawful delegation of legislative power under the state Constitution (art. IV, § 1); (8) that the provisions of section 9(c)(2) and (e) of the Reclamation Project Act of 1939 (53 Stats. 1187, 43 U.S.C., § 485), pursuant to which the contracts purport to have been executed, constitute an unconstitutional delegation of power to the Secretary of the Interior, and (9) that those provisions of the contracts which provide that the United States is entitled to all waste, seepage,

and return flow water derived from water supplied under the contracts to the member units through the agency, are invalid under the federal reclamation laws and the law of the state which make such waters appurtenant to the lands irrigated.

The agency demurred generally to each of the affirmative defenses and the demurrers were sustained.

The causes were tried on November 14, 1951, and a judgment was entered on October 22, 1952. The judgment declared (a) the legality of the organization and existence of the agency, the city of Santa Barbara and the four county water districts, (b) the due execution of the six contracts, (c) the lawfulness of the contracts, and (d) that the defendants had waived and were estopped from asserting the illegality or unconstitutionality of the agency and of the Santa Barbara County Agency Act. The defendants have appealed from all portions of the judgment. The Attorney General of the State of California has appeared as amicus curiae in support of the judgment, and the Di Giorgio Fruit Corporation has appeared as amicus curiae asserting the invalidity of the contract.

The county of Santa Barbara is situated in a semiarid portion of Southern California. It has no common source of water supply that can serve the entire county but contains numerous noncontiguous watersheds. The county has grown greatly in population and developed an economy requiring full utilization and development of all available water supplies. For many years the county made investigations and engineering surveys of its water resources utilizing private, public and United States engineers for that purpose. Pursuant thereto, in June, 1945, a comprehensive water development plan for the county was submitted by the Bureau of Reclamation, and the Santa Barbara County Water Agency was formed by the Legislature in 1945 to carry out the plan. The agency's boundaries are coextensive with those of the county and the lands served by all member units lie within its boundaries.

Commencing in 1946 the agency began negotiations for a water supply from the Cachuma Unit of the Santa Barbara County Project, described in House Document Number 587 of the 80th Congress, 2d Session of April 1, 1948. That document reveals that the Cachuma Unit will consist of the Cachuma Dam and Reservoir on the Santa Ynez River, the Tecelote Transmountain Diversion Tunnel and the South Coast

Conduit; that it is to be constructed, operated and maintained by the Bureau of Reclamation, pursuant to federal reclamation laws; that the water to be diverted for purposes of the project is unappropriated water to be appropriated under state law, and that the estimated cost of construction of the Cachuma Unit, exclusive of irrigation distribution works, is $28,610,000. This amount is to be reimbursed to the United States by payments for water in excess of the costs of upkeep, operation and maintenance over a period calculated not to exceed 50 years. ■ It is apparent that what we have said in *Ivanhoe Irr. Dist.* v. *All Parties, ante,* p. 597 [306 P.2d 824], is equally true in the present case, namely, that the relationship between the parties is that of debtor and creditor, contemplating a state project to be eventually owned and operated locally, and that the domestic water herein appropriated for beneficial use must be and can only be devoted to a use consistent with the purpose of the appropriation and the trust relationship existing between the United States and the water users entitled to service within the agency.

The contracts in question are for the furnishing of domestic water by a purveyor thereof at a stipulated price. They do not involve the construction of distribution systems, as in the Ivanhoe and Madera cases. (*Ivanhoe Irr. Dist.* v. *All Parties, ante,* p. 597 [306 P.2d 824]; *Madera Irr. Dist.* v. *All Persons, ante,* p. 681 [306 P.2d 886].) The master contract contemplates a supply of water for irrigation, municipal, domestic, industrial and other uses to be furnished and delivered to each member unit of the agency for a period of 40 years, specifying delivery points, time of delivery and maximum rates for various classes of water. The agency is charged with the payments for all water delivered to member units. Provisions other than those specifically objected to by the defendants in their affirmative defenses provide for the storage of water, availability of excess water, responsibility for water shortage, the recognition by the bureau of existing water rights, transfers of water by member units, defaults in payments, inspection of books and records by the bureau and other provisions not here material.

The member unit contracts, identical in form, are in general repetitions of the master contract except as to the contracting parties and the changes made necessary by the substitution thereof. Payments for water to be delivered are to be made by member units to the agency. Those features of the master contract which are objected to are contained also in each of the member unit contracts.

A preliminary question relates to the validity of the Santa Barbara Water Agency Act and the existence of the contracting entities. The contracts require that the agency and the member units initiate legal proceedings which seek not only the confirmation of the contracts but also the confirmation of the legality of the organization of the agency and the member units. As previously noted the defendants contend in their first affirmative defense that the act violates section 31 of article IV of the Constitution, which prohibits legislative authorization for the donation of public funds. Section 10.2 of the act provides in part that the agency shall have the power to expend any or all of the funds or contributions in aid of: (a) the construction or payment of the cost of works; (b) the purchase or obtaining of water or a water supply; and (c) the payment of any liability "assumed as principal, guarantor, or underwriter on an indebtedness in connection with such construction, payment, purchase or obtaining; if such works are constructed or said water or water supply is obtained for or on behalf of the agency or its member units. . . ." In accordance with the above and other provisions of the act (see § 5.1) the agency has agreed in its contracts to pay for water furnished to member units to the extent of $100,000 annually, prorated among the member units in accordance with their respective annual payments to the agency. This, it is contended, constitutes a gift of public funds and a violation of section 31, article IV.

It is the general rule that a contribution from one public agency to another for a purely local purpose of the donee agency is in violation of the constitutional prohibition, but that such a contribution is legal if it serves the public purpose of the donor agency even though it is beneficial to local purposes of the donee agency. (*Pacific Mutual Life Ins. Co.* v. *County of San Diego,* 112 Cal. 314 [41 P. 423, 44 P. 571].) Thus in *City of Oakland* v. *Garrison,* 194 Cal. 298 [228 P. 433], payment by the county of Alameda to the city of Oakland to improve a street entirely within the city was held to be proper where the county board of supervisors found it would be for the general good of the county. And in *County of Los Angeles* v. *Riley,* 6 Cal.2d 625 [59 P.2d 139, 106 A.L.R. 903], it was held that the state could impose a statewide tax on motor vehicles and then apportion some of the proceeds to the counties for local use because a statewise public purpose was being served. "The determination of what constitutes a public purpose is primarily a matter for legis-

lative discretion [citations] which is not disturbed by the courts so long as it has a reasonable basis [citations]. This court has frequently upheld the expenditure of funds by the state or by its subdivisions for the benefit of individuals as for a 'public purpose' and hence not within section 31 of Article IV." (*County of Alameda* v. *Janssen*, 16 Cal.2d 276 at 281 [106 P.2d 11, 130 A.L.R. 1141]; see also *County of Los Angeles* v. *La Fuente*, 20 Cal.2d 870, 876 [129 P.2d 378]; *California Emp. Stab. Com.* v. *Payne*, 31 Cal.2d 210, 216 [187 P.2d 702].)

■ That the conservation and beneficial use of the domestic waters of this state serve a public purpose is without question. (Const., art. XIV, § 3.) ■ The legislative determination that those provisions of the act whereby the agency could expend funds in assistance to member units in furtherance of the public purposes served by the act is entitled to a strong presumption of constitutionality and nothing appears herein to dispel that presumption. ■ The financial assistance of the agency in making the overall plan economically feasible to the member units is a proper means of effecting the public purpose for the general good of the whole of the area served by the agency.

It is next contended by the defendants in both their first and second affirmative defenses that the act creating the agency is in violation of article XI, section 12 of the Constitution, which forbids the Legislature to levy taxes on public corporations, or upon the property thereof, "for county, city, town, or other municipal purposes but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes. . . ."

■ The limitations of section 12 do not prevent the Legislature from authorizing a district to impose taxes for a state purpose (*Joint Highway Dist. No. 13* v. *Hinman*, 220 Cal. 578, 588 [32 P. 144]), nor for a purpose that transcends the boundaries of the various municipalities that may be included within the limits of a larger district (*Henshaw* v. *Foster*, 176 Cal. 507, 511 [169 P. 82]; *Pixley* v. *Saunders*, 168 Cal. 152 [141 P. 815].) In view of the declaration of section 3, article XIV of the Constitution, that "because of conditions prevailing in this State the general welfare requires that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable use or unreasonable method of use of water be prevented, and that the conservation of such water is to be

exercised with a view to the reasonable and beneficial use thereof in the interest of the people and for the public welfare . . .," it is contended by the agency that it serves more than a "county, city, town or other municipal purpose" within the meaning of section 12, and that the constitutional prohibition is therefore inapplicable in the present situation. This contention has support in the legislative and decisional law of the state. In spite of numerous enactments for the conservation of water wherein the power to levy taxes and assessments was conferred on an agency of the state, and in numerous cases where the constitutionality of such enactments was questioned on various grounds, no case is referred to or has been found wherein a specially created district with taxing powers similar in scope to those of the present agency has been held to be unconstitutional by reason of section 12. (Cf. Municipal Home Rule in California, John C. Peppin, 34 Cal.L.Rev. 644.)

It is also contended that section 12 of article XI invalidates the power given the agency by section 10.3 of the act by levying a special tax solely within the defaulting member unit to cure the defaulted financial obligation owing the agency. But a larger district, in assessing benefits, can establish zones for that purpose in different portions of the district. (See Los Angeles County Flood Control Dist. v. Hamilton, 177 Cal. 119, at 128 [169 P. 1028].) The levy prescribed by section 10.3 of the act is a protection for the agency, is not local as to the member units but transcends their boundaries and does not violate the "municipal purpose" clause of section 12 of article XI. (Pixley v. Saunders, supra, 168 Cal. 152; Pasadena v. Chamberlain, 204 Cal. 653 [269 P. 630]; County of Los Angeles v. Hunt, 198 Cal. 753 [247 P. 897].)

It is also contended, although not specifically set out in any of the affirmative defenses, that the special enactment of the Santa Barbara County Water Agency Act is in violation of section 6, article XI of the Constitution, which provides in part: "Corporations for municipal purposes shall not be created by special laws; but, the Legislature shall, by general laws, provide for the incorporation, organization and classification, in proportion to population, of cities and towns. . . ." The question is whether the agency has been created for "municipal purposes" within the meaning of the above section.

It would appear from a reading of the section that the term "municipal purposes" has reference to the purposes

of "cities and towns." Such a construction was applied by the court in *Turlock Irr. Dist.* v. *White,* 186 Cal. 183 [198 P. 1060, 17 A.L.R. 72]. There the court had before it the meaning of "municipal corporation" as employed in section 1 of article XIII of the Constitution. In defining that expression as not to include an irrigation district the court referred to section 6, article XI, and stated at page 188: "At the same election article XI, section 6, was amended by the people. This section restricts the power of the legislature in the formation of municipal corporations, to providing by general law for their formation, and prohibits the formation of such corporation by special statute. That section uses the term 'municipal corporation' as synonymous with 'cities and towns.' " (See also *Laguna Beach County Water Dist.* v. *Orange County,* 30 Cal.App.2d 740, 743 [87 P.2d 46] ; *People* v. *Rinner,* 62 Cal.App. 747, 751 [199 P. 1066].)

 Generally it is true that where the scope of a project transcends the boundaries of a municipality it ceases to be for a municipal purpose. (See *Pixley* v. *Saunders, supra,* 168 Cal. 152; *County of Los Angeles* v. *Hunt, supra,* 198 Cal. 753; *Gadd* v. *McGuire,* 69 Cal.App. 347 [231 P. 754].) In *Pasadena* v. *Chamberlain, supra,* 204 Cal. 653, involving the constitutionality of the Metropolitan Water District Act with respect to article XI, section 6, this court held that in the combined operations of several municipalities under the act, "the municipalities engaged therein could not be held to be engaged in the conduct of a merely municipal affair." A similar conclusion was reached in *Van de Water* v. *Pridham,* 33 Cal.App. 252, 259 [164 P. 1136], relative to drainage ditches constructed partly within a city under the Drainage Act of 1903; and in *Pasadena Park Imp. Co.* v. *Lelande,* 175 Cal. 511 [166 P. 341], relating to a protection district (Stats. 1895, p. 248) to protect against floods and including city lands. Numerous cases have established that special legislation in the creation of various types of districts dealing with water problems is not in contravention of the "municipal purpose" clause of section 6 of article XI. (*People* v. *Levee Dist. No. 6,* 131 Cal. 30 [63 P. 676] [levee district] ; *People* v. *Sacramento Drainage Dist.,* 155 Cal. 373 [103 P. 207] [drainage district] ; *Reclamation District No. 70* v. *Sherman,* 11 Cal.App. 399 [105 P. 277], and *Peterson* v. *Board of Supervisors,* 65 Cal.App. 670 [225 P. 28] [reclamation districts] ; *Barber* v. *Galloway,* 195 Cal. 1, 13 [231 P. 34] [combined irrigation, drainage and

water distribution district, i.e., Palo Verde Irrigation District].)

It is noted that the cases have made distinctions between the meaning to be given to the terms "municipal corporations" or "municipal purposes," depending upon the particular section of the Constitution to which the definition relates. (See dissenting opinion by Chief Justice Beatty in *County of San Mateo* v. *Coburn*, 130 Cal. 631, at page 637 [63 P. 78, 621].) It is concluded that the agency is not performing a purely municipal function within the meaning of section 6 of article XI and the decisional law thereon.

The invalidity of the act is also urged by the defendants in their third and fourth affirmative defenses on the ground, generally, that the only lands receiving benefits thereunder are those within the member units; that considerable portions of land within the boundaries of the agency are not within any member unit and therefore are not benefited by the act, and that the levy of an ad valorem tax on all lands within the agency authorized by the act is a taking of property without due process of law. This contention has often been litigated under similar circumstances. The basis question relates to a proper finding of a benefit conferred on lands not directly served. ■ In the present case the agency was created by a special act of the Legislature wherein it was determined what lands were to be assessed for the benefit of the public improvement. In such circumstances "the property owners are not entitled to a hearing on the question of benefits to the land included within the district for they are conclusively presumed to have been heard through their representatives in the legislature." (*Orosi Public Utility Dist., In re,* 196 Cal. 43, 50 [235 P. 1004].) Such a determination, however, cannot be arbitrary, capricious or without factual basis.

■ The basis of proper legislative determination of benefits conferred on all lands within a district is dealt with exhaustively in *Los Angeles County Flood Control Dist.* v. *Hamilton, supra,* 177 Cal. 119, and that case is determinative of the contentions in the present case. There claims of lack of direct benefit of all lands within the district were the same for all material purposes as those urged by the defendants in their third and fourth affirmative defenses. Beginning at page 123 this court stated: "The warrant and justification for charging the cost of such improvement upon designated lands is to be found, in theory at least, in the benefit to be derived by the lands assessed from the contemplated work.

712

(*Reclamation Dist.* v. *Birks,* 159 Cal. 233, 241 [113 P. 170].) . . . The fixing of the district which is to bear the expense of a local improvement, and the mode in which such expense is to be borne and distributed, are primarily legislative questions. . . . But since the imposition of such costs finds its ground of sanction in the benefits conferred upon the lands charged, it may well be that the legislative conclusion should not be upheld where the court can see that it is contrary to any rational view of the facts, and that lands have been included that 'plainly could not by any fair or proper view of the facts be benefited.' . . .'' The court proceeded to examine the facts, noting that the district contained ''several separate and unconnected watersheds''; that it ''comprised a considerable area of mountainous land''; that much of the district lay ''above the plane of any flood waters which are to be anticipated,'' and that other lands were beyond the area of possible floods. Conceding that such lands could not be directly benefited, the court held that ''the benefit which would justify the inclusion of land within the district need not be so direct and immediate as is assumed in the argument of counsel opposing the validity of the act.'' In referring to numerous cases involving problems closely related to the present one, the court concluded that an ''examination of these cases will show that the courts have regarded an incidental or indirect benefit as sufficient to justify the imposition of a part of the burden of the improvement. Such indirect benefit may result from the improvement of neighboring and surrounding land, and the consequent increase in the value of all land within the district. . . . The proper maintenance of the harbors by protecting them from flood damage, the preservation of the means of communication between the different parts of the district by guarding against damage to highways and bridges . . . these are purposes whose execution may well be of substantial and immediate benefit to all of the lands included within the district.'' ▆▆▆ As to the imposition of an ad valorem tax, the court had this to say, beginning at page 124: ''It is thoroughly settled that the legislature may apply the *ad valorem* method of assessment, without any judicial inquiry into, or determination of, the extent of benefits. Recognizing that absolute equality cannot be attained under any system of taxation or assessment, the courts hold that constitutional requirements are satisfied by that approximation to equality which may fairly be thought to result from an assessment of the cost upon the property benefited in proportion to its

ascertained value. (*Burnett* v. *Mayor, etc. of Sacramento,* 12 Cal. 76, 84 [73 Am.Dec. 518]; *In re Madera Irr. Dist.,* 92 Cal. 296 [27 Am.St.Rep. 106, 14 L.R.A. 755, 28 P. 272, 675]; *Thomas* v. *Pridham,* 171 Cal. 98, 104 [153 P. 933]; *Fallbrook Irr. Dist.* v. *Bradley, supra* [164 U.S. 112 (17 S.Ct. 56, 41 L.Ed. 369)].)''

██ From the foregoing it is apparent that the inclusion of all of the lands within the agency and the imposition of an ad valorem tax on all of these lands on the ground that they would benefit by the operation thereof was a matter properly determined by the Legislature. ██ It is noted that among the purposes for which the agency was created are ''controlling and conserving storm, flood and other surface waters for any beneficial use and for the protection of life and property in said district.'' (Stats. 1945, p. 2780.) Those indirect benefits referred to in *Los Angeles Flood Control District* v. *Hamilton, supra,* and conferred upon all of the lands within the agency, appear to be well within the legitimate scope of the act.

██ In their fifth affirmative defense the defendants raise issues which have been discussed and disposed of in *Ivanhoe Irr. Dist.* v. *All Parties, ante,* p. 597 [306 P.2d 824], and in *Madera Irr. Dist.* v. *All Persons, ante,* p. 681 [306 P.2d 886]. In accordance therewith it is concluded that the excess land provisions of the contracts involved here, which are substantially the same as those in the Ivanhoe and Madera contracts, are inapplicable and if not declared to be so would deprive the landowners of the member units of their property rights without due process of law and constitute a denial of the equal protection of the laws; that the United States is acting in its proprietary capacity as a purveyor of the domestic waters of the state to the agency and its member units; that it is bound to observe and comply with the laws of the state with reference to the rights of the water users being served, and that the contract is invalid insofar as it, by implication or otherwise, provides that the United States can arbitrarily cause to be discontinued the distribution of water to those for whose benefit the right to the water was acquired in the first instance.

Numerous other grounds for the invalidity of the contracts are asserted. It is stated in the defendants' sixth affirmative defense that the contracts are lacking in consideration and are impossible of performance, in their seventh and eighth affirmative defenses that provisions in the contracts author-

ized by the Water Code (§ 23202) and the Reclamation Act of 1939 (§ 9[c][2], [e], 53 Stats. 1187) delegate legislative power to the Secretary of the Interior in violation of the Fourteenth Amendment of the federal Constitution and provisions in the state Constitution (art. IV, § 1) and in the ninth affirmative defense that the provisions entitling the United States to all waste, seepage and return flow are invalid. These contentions are insufficiently supported when considered with what has been said herein and in the Ivanhoe and Madera cases as to the matters concerning which the parties may properly contract.

Questions have been raised as to the sufficiency of certain proceedings leading to the execution of the contracts and the notice of elections for their confirmation. Such questions need not be determined in this case for the reason that upon a submission of any further proposed contracts the alleged defects need not recur.

The attorney general appearing as amicus curiae in behalf of the State of California in support of the judgment, questions the right of the appellants to prosecute this appeal. It appears that the notice of appeal was filed some 35 days after entry of the judgment. Section 11.10 of the Santa Barbara County Water Agency Act provides in part that any "party may appeal at any time within 30 days after the entry of the judgment." It is contended that the failure to appeal within the time specified requires that the appeal be dismissed by the court of its own motion, even if no objection has been made by any party to the proceeding. (*In re Horowitz*, 33 Cal.2d 534, 537 [203 P.2d 513] ; *Estate of Hanley*, 23 Cal.2d 120, 123 [142 P.2d 423, 149 A.L.R. 1250].)

The appellants assert that the 30-day period within which an appeal "may" be taken in pursuance of section 11.10 of the act is permissive and not mandatory. Section 2(i) of the act provides that "may" is permissive and "shall" is mandatory. Section 11.10 of the act, after setting forth the special provision for the time in which to appeal, states further that the "rules of pleading and practice not inconsistent with the provisions of this section, are applicable to all actions or proceedings provided for by this section." Rule 2(a) of the Rules on Appeal provide that "Except as otherwise specifically provided by law, notice of appeal shall be filed within 60 days from the date of entry of the judgment. . . ."

The appellants contend that as the special provision is

permissive only, it is not inconsistent with the Rules on Appeal and that the latter should control. In support thereof they refer to the following declaration in section 11.10 of the act: "In a contest provided for by this Section, the court shall disregard any irregularity or omission which does not affect the substantial rights of the parties." They claim that no substantial right of the respondent has been adversely affected. Furthermore, it is argued, that when the law is doubtful as to the right of appeal, the cause will be heard on its merits. (*People* v. *Bryant,* 207 Cal. 450, 452 [278 P. 1025]; *San Francisco* v. *Certain Real Estate,* 42 Cal. 513.) In *People* v. *Bank of San Luis Obispo,* 152 Cal. 261, it is said at page 264 [92 P. 481]: "The right of appeal is remedial and in doubtful cases the doubt should be resolved in favor of the right whenever the substantial interests of a party are affected by a judgment."

The intent of the so-called "permissive" appeal provisions of section 11.10 at best is doubtful and in accordance with the foregoing no good reason appears why the appeal should not be entertained.

It is concluded that the judgment insofar as it declares the validity of the Santa Barbara Water Agency Act and the existence of the agency and its member units must be and hereby is affirmed. Insofar as the judgment confirms and declares valid the master contract and the five member unit contracts it is reversed, the appellants to recover costs on appeal.

Schauer, J., Spence, J., and McComb, J., concurred.

GIBSON, C. J., Concurring and Dissenting.—I concur in the views expressed in the portion of the majority opinion which relates to the validity of the Santa Barbara Water Agency Act and the existence of the Agency and its member units. For the reasons stated in my dissenting opinion in *Ivanhoe Irr. Dist.* v. *All Parties, ante,* p. 597 [306 P.2d 824], I disagree with the majority opinion insofar as it reverses the judgment of the trial court.

Traynor, J., concurred.

CARTER, J., Dissenting.—This is a companion case to *Ivanhoe Irr. Dist.* v. *All Parties, ante,* p. 597 [306 P.2d

824], and for the reasons stated in my dissenting opinion in that case, I would affirm the judgment of the trial court here.

Respondent's petition for a rehearing was denied February 19, 1957. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.